[No. D038629. Fourth Dist., Div. One. Dec. 14, 2001.]

UNITED SERVICES AUTOMOBILE ASSOCIATION, Plaintiff and Respondent, v.
ALASKA INSURANCE COMPANY et al., Defendants, Cross-complainants and Appellants;
CLAUDEWELL THOMAS, Cross-defendant and Respondent.

COUNSEL

Schaffer & Lax, Stephen A. Lax and Julie A. August for Defendants, Cross-complainants and Appellants.

Howard, Moss, Loveder, Stickroth & Walker, Robert J. Moss, Daniel G. Pezold and James E. Loveder for Plaintiff and Respondent.

No appearance for Cross-defendant and Respondent.

OPINION

McINTYRE, J.—Defendants Alaska Insurance Company and its successor in interest New Hampshire Insurance Company (collectively New Hampshire) appeal a judgment requiring New Hampshire, as a primary insurer, to reimburse plaintiff United Services Automobile Association (USAA), as an excess insurer, the money USAA paid to settle a bad faith action brought against it by an injured third party claimant as the assignee of the parties' mutual insured. New Hampshire contends: (1) USAA cannot maintain this action because it was not an excess carrier as to the subject claim; (2) USAA is not an equitable indemnitee of New Hampshire; (3) USAA is estopped from claiming it is an excess carrier; (4) USAA waived any claim that it is an excess carrier; (5) USAA's payments in settlement of the bad faith action were made as a volunteer; and (6) the court erred in awarding USAA its attorney fees in the present action. We reverse.

FACTUAL AND PROCEDURAL BACKGROUND

The facts essential to the resolution of this appeal are undisputed. In 1989, in Anchorage, Alaska, Dr. Claudewell Thomas and his wife, Carolyn

Thomas, rented a car and were involved in a collision with another vehicle while Mrs. Thomas was driving and Dr. Thomas was a passenger in the rental car. Dr. Thomas was seriously injured in the accident. When they rented the car, the Thomases bought automobile liability insurance under a policy New Hampshire issued to the rental company. They were also insured under their personal automobile policy issued by USAA.

The Thomases' car rental contract provided that the liability limits of the insurance on the rental car were the minimum limits required by Alaska law, $50,000 per person and $100,000 per accident. However, the actual liability limit under the New Hampshire policy that covered the rental car was $1 million. USAA's policy contained an exclusion that provided: "We do not provide Liability Coverage for you or any family member for bodily injury to you or any family member" (the family member exclusion).

Dr. Thomas filed a negligence action in Alaska against Mrs. Thomas for the personal injuries he suffered in the accident. Mrs. Thomas tendered defense of the action to both New Hampshire and USAA. New Hampshire admitted its policy was primary to USAA's policy with respect to Dr. Thomas's claims and assumed Mrs. Thomas's defense. USAA denied coverage for Dr. Thomas's claims based on the family member exclusion in its policy.

The Thomases eventually entered into a written agreement to settle the personal injury action. In accordance with that agreement: (1) Mrs. Thomas executed a confession of judgment allowing judgment to be entered against her and in favor of Dr. Thomas in the amount of $850,000; (2) Mrs. Thomas assigned to Dr. Thomas all rights and causes of action she had against USAA arising out of its refusal to defend and indemnify her in exchange for Dr. Thomas's agreement not to execute on the stipulated judgment; and (3) New Hampshire paid Dr. Thomas $200,000 in partial satisfaction of the stipulated judgment in exchange for his agreement to release New Hampshire from any further liability to him in the personal injury action and to defend and indemnify New Hampshire from any further liability it might have to USAA.

After settling the personal injury case, Dr. Thomas filed a breach of contract and bad faith action against USAA in Alaska. While that case was pending, the Supreme Court of Texas, the state in which USAA's home office is located, ruled in another case that the family member exclusion was invalid to the extent it excluded coverage in the amount of the minimum

insurance limits required by Texas law, but was valid as to coverage amounts above those limits. In light of that ruling, USAA decided to pay Dr. Thomas $50,0000, the minimum liability limit required under Alaska law, plus prejudgment interest of $23,194.94 and attorney fees of $9,819.49, for a total payment of $83,014.43. USAA did not ask Dr. Thomas for anything in exchange for that payment except his acknowledgement that he received the minimum coverage Mrs. Thomas would have been required to carry under Alaska law. USAA later paid an additional $75,000 to settle the bad faith action.

After settling the bad faith action, USAA filed the instant action against New Hampshire for express indemnity, equitable indemnity and other causes of action. New Hampshire filed a cross-complaint for express and implied indemnity and declaratory relief against Dr. Thomas. The case was tried to the court on USAA's causes of action for equitable indemnity and subrogation and New Hampshire's cross-complaint. New Hampshire states that the only cause of action actually tried was equitable subrogation, although the accuracy of that statement is not clear from the record. USAA addressed equitable subrogation but not equitable indemnity in its trial brief, and its counsel did not directly address either cause of action during the reported portion of the trial. At one point, however, USAA's counsel referred to the bad faith settlement money USAA paid as "out-of-pocket indemnity dollars."

Although the court never specified in its oral statements during trial, written statement of decision, or the judgment which theory it was applying, it awarded USAA damages of $436,246.43, consisting of the $158,014.43 USAA paid Dr. Thomas in the bad faith action and $278,232 in attorney fees and costs incurred by USAA in defending that action. The court also awarded USAA the attorney fees it incurred in prosecuting the instant action. The court rendered judgment for New Hampshire on its cross-complaint against Dr. Thomas, awarding it complete indemnity for the damages awarded to USAA plus $92,823.95 in attorney fees it incurred defending against USAA's action.

### DISCUSSION

USAA argues that the court's rulings in its favor are subject to the substantial evidence standard of review. As noted, however, the essential facts of this case are undisputed. Based on those facts, we conclude that New Hampshire is not liable to USAA as a matter of law.

## I. *USAA Waived the Right to Challenge New Hampshire's Settlement of the Personal Injury Case*

The gravamen of USAA's claims in the instant action is that the amount New Hampshire paid to settle Dr. Thomas's personal injury action was unreasonably low in light of its policy limits of $1 million. New Hampshire contends that by denying coverage in the personal injury case, USAA waived the right to claim excess carrier status and pursue equitable subrogation.

When a liability insurer denies coverage and refuses to provide a defense against a third party claim, the insured is free to make the best good faith settlement possible with the third party, including a stipulated judgment with a covenant not to execute. (*Pruyn v. Agricultural Ins. Co.* (1995) 36 Cal.App.4th 500, 515 [42 Cal.Rptr.2d 295]; *Phoenix Ins. Co. v. United States Fire Ins. Co.* (1987) 189 Cal.App.3d 1511, 1526 [235 Cal.Rptr. 185].) An extension of that principle is that an insurer who refuses to join in a coinsurer's defense of a covered claim waives the right to challenge the reasonableness of the coinsurer's settlement of the claim. (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2001) ¶¶ 8:67.21 to 8:67.22, p. 8-22; *American Star Ins. Co. v. Insurance Co. of the West* (1991) 232 Cal.App.3d 1320, 1332-1333 [284 Cal.Rptr. 45].) Similarly, we hold that when an excess insurer denies excess coverage for a third party claim, it waives the right to challenge the reasonableness of the primary insurer's settlement of the claim. The underlying principle in all three situations is that when a liability insurer denies coverage for a third party claim and abandons its insured, it relinquishes the right to object to the manner in which the claim is resolved by the insured or any other insurer providing coverage for the claim. A contrary rule would render the insured's right to settle meaningless in cases where an insurer denies liability. (*Phoenix Ins. Co. v. United States Fire Ins. Co.*, *supra*, 189 Cal.App.3d at pp. 1526-1527.) USAA's denial of coverage in the personal injury case precludes it from challenging New Hampshire's settlement of the case in the instant action.

## II. *USAA Is Not Entitled to Equitable Indemnity or Equitable Subrogation*

Irrespective of USAA's waiver of the right to challenge the reasonableness of New Hampshire's settlement of Dr. Thomas's claims against Mrs. Thomas, we conclude New Hampshire is not liable to USAA under a theory of either equitable indemnity or equitable subrogation.

### A. *Equitable indemnity*

Equitable indemnity " 'applies in cases in which one party pays a debt for which another is primarily liable and which in equity and

good conscience should have been paid by the latter party.'" (*Phoenix Ins. Co. v. United States Fire Ins. Co., supra,* 189 Cal.App.3d at p. 1526.)
USAA's payments in settlement of the bad faith case cannot reasonably be viewed as the payment of a debt for which New Hampshire should be held liable because they were made in settlement of claims against *USAA* for breach of contract and bad faith. We have found no case in which an insurer sought, let alone recovered, equitable indemnity from another insurer for money the former paid to settle bad faith claims against itself. In the underlying personal injury action, New Hampshire settled with and obtained a release from the third party claimant, Dr. Thomas. Mrs. Thomas agreed to the settlement and did not seek further indemnity from New Hampshire because Dr. Thomas agreed not to execute on the stipulated judgment against her in exchange for the assignment of her claims against USAA to him. Thus, when USAA later settled the bad faith action, New Hampshire owed no debt to either Dr. Thomas or Mrs. Thomas for USAA to pay. USAA is not entitled to recover its bad faith settlement payments from New Hampshire on a theory of equitable indemnity.

### B.   *Equitable subrogation*

"Equitable subrogation permits a party who has been required to satisfy a loss created by a third party's wrongful act to 'step into the shoes' of the loser and pursue recovery from the responsible wrongdoer. [Citation.] In the insurance context, the doctrine permits the paying insurer to be placed in the shoes of the insured and to pursue recovery from third parties responsible to the insured for the loss for which the insurer was liable and paid." (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1595-1596 [26 Cal.Rptr.2d 762].) Because subrogation rights are purely derivative, an insurer cannot acquire anything by subrogation to which the insured has no right and can claim no right the insured does not have. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1998) 65 Cal.App.4th 1279, 1292 [77 Cal.Rptr.2d 296].)

The elements of an insurer's cause of action for equitable subrogation are: "(1) the insured has suffered a loss for which the party to be charged is liable; (2) the insurer has compensated for the loss; (3) the insured has existing, assignable causes of action against the party to be charged, which the insured could have pursued had the insurer not compensated the loss; (4) the insurer has suffered damages caused by the act or omission which triggers the liability of the party to be charged; (5) justice requires that the

loss be shifted entirely from the insurer to the party to be charged; and (6) the insurer's damages are in a stated sum, which is usually the amount paid to the insured, assuming the payment was not voluntary and was reasonable." (*Gulf Ins. Co. v. TIG Ins. Co.* (2001) 86 Cal.App.4th 422, 432 [103 Cal.Rptr.2d 305].) ▇ The third and fourth elements are not present in this case.

To satisfy the third element, USAA must establish that Mrs. Thomas, as the insured, had an assignable cause of action against New Hampshire after agreeing to the settlement of Dr. Thomas's personal injury action. USAA suggests (but never expressly asserts) that Mrs. Thomas had an assignable bad faith claim against New Hampshire for failing to fully defend and settle the personal injury action within its policy limits of $1 million. Mrs. Thomas had no such bad faith claim against New Hampshire because New Hampshire accepted her tender of defense and settled within its $1 million policy limits, and Mrs. Thomas *agreed to the settlement.* ▇ Although we have found no case on point, we conclude that when an insured agrees to an insurer's settlement of a third party claim, the insured waives any right to maintain a bad faith action against the insurer based on the settlement, unless the insured's agreement to the settlement was procured by coercion, duress, fraud or some other improper means. A finding of implied waiver under these circumstances accords with the principle that " 'California courts will find waiver when a . . . party's acts are so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.' " (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 33-34 [44 Cal.Rptr.2d 370, 900 P.2d 619].) ▇ Because there is no evidence in the record that New Hampshire procured Mrs. Thomas's agreement to the settlement of the underlying personal injury action by improper means, New Hampshire's role in the settlement cannot serve as the basis for an assignable cause of action against New Hampshire by USAA as Mrs. Thomas's equitable subrogee.

To satisfy the fourth element of equitable subrogation, USAA must have sustained damages caused by some act or omission upon which the liability of the party to be charged (New Hampshire) depends. USAA argues that the money it paid to settle Mrs. Thomas's assigned bad faith action constitutes damages it suffered as a result of New Hampshire's failure to provide a complete defense and satisfy the stipulated judgment in Dr. Thomas's personal injury action against Mrs. Thomas. However, New Hampshire's handling of the defense and settlement of the personal injury action cannot be deemed the cause of USAA's settlement payments in the subsequent bad faith action.

Ordinarily, an excess insurer's damages in an equitable subrogation action against a primary insurer are the sums the excess insurer paid to settle a third party claim against the insured due to the primary insurer's wrongful refusal to settle. (See *Commercial Union Assurance Companies v. Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 918 [164 Cal.Rptr. 709, 610 P.2d 1038].) The damages USAA contends it sustained (the sums it paid to settle the bad faith case) were not caused by New Hampshire's conduct but by *USAA's own* alleged wrongful conduct—i.e., its denial of coverage in the personal injury case based on the family member exclusion. Because USAA, under the theory of equitable subrogation, stands in Mrs. Thomas's shoes and is entitled to recover from New Hampshire only what Mrs. Thomas could have recovered from New Hampshire, USAA's equitable subrogation claim rests on the untenable premise that Mrs. Thomas could have recovered compensation from New Hampshire for *USAA's* alleged wrongful denial of coverage.

USAA argues it is entitled to recover the money it paid to resolve the bad faith case from New Hampshire because (1) its bad faith settlement payments were essentially "additional indemnity for Dr. Thomas's injury" and should be treated as if USAA had contributed them toward satisfaction of the stipulated judgment at the time the personal injury case settled, and (2) its bad faith settlement payments constituted contract damages sustained by Mrs. Thomas because the total amount of the payments did not exceed the balance due on the stipulated judgment.

We disagree that the money USAA paid to settle the bad faith case should be treated the same as if USAA had directly paid it toward the stipulated judgment at the time the personal injury action settled. As noted, the right of equitable subrogation (or equitable indemnity) typically arises when an excess insurer pays a sum within the primary insurer's limits to settle a third party claim for which the primary insurer provides coverage. Money paid in settlement of such a claim represents *the insured's* direct liability to the injured third party. In contrast, money paid by an insurer to settle an insured's bad faith or breach of contract claim represents *the insurer's* direct liability to the insured for the insurer's own wrongful conduct. The fact that Mrs. Thomas's assigned bad faith and breach of contract claims were based on USAA's contractual obligation to indemnify Mrs. Thomas against third party personal injury claims does not transform USAA's settlement of the bad faith case into a settlement of the personal injury case in which it refused to participate.

USAA had two potentially meritorious defenses to the bad faith action: (1) coverage was excluded under the family member exclusion; and (2) it had no

liability as an excess insurer because New Hampshire's policy limits had not been exhausted. Instead of litigating those defenses, USAA chose to settle, presumably because there was a reasonable possibility New Hampshire's policy limits would be determined to be those stated in the Thomases' car rental agreement ($50,000 per person and $100,000 per accident) or the family exclusion would be determined to be invalid under Alaska law. USAA cannot equitably recover from New Hampshire the payments it made in recognition of its own potential direct liability to the insured for its own acts and omissions. There is simply no authority that allows an insurer to deny coverage for a third party claim, settle the insured's subsequent bad faith claim based on its denial of coverage, and then obtain reimbursement for the bad faith settlement from another insurer that provided coverage to the insured and settled the underlying case.

Regarding USAA's argument that its bad faith settlement payments were all contract damages sustained by Mrs. Thomas because the amount of the payments did not exceed the unpaid balance of the stipulated judgment, we note that in an insurance bad faith case, breach of contract and tortious breach of the implied covenant of good faith and fair dealing are both *contract-based* theories for the recovery of benefits due under an insurance policy. (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1153 [271 Cal.Rptr. 246].) Although the insured (but not the insured's assignee) may recover additional damages under the tort cause of action that are unavailable under a strictly contract-based cause of action, including emotional distress and punitive damages (*Cates Construction, Inc. v. Talbot Partners* (1999) 21 Cal.4th 28, 43-44 [86 Cal.Rptr.2d 855, 980 P.2d 407]), we are aware of no authority for the proposition that an insured's damages in an insurance bad faith action cannot be deemed tort damages until they exceed the amount of the insurer's policy limits, nor do we see any logic in that proposition.

In any event, we fail to see how viewing USAA's bad faith settlement payments as contract damages rather than tort damages gives USAA any greater right to recover them from New Hampshire under a theory of either equitable subrogation or equitable indemnity. Whether viewed as contract damages or tort damages, the payments were made in settlement of claims against USAA for *its own* alleged wrongful conduct, not in settlement of claims against Mrs. Thomas, the insured. Equitable indemnity and equitable subrogation come into play when an excess insurer or coinsurer has paid money to settle a third party claim or satisfy a judgment against the insured for a covered risk. Money paid by an insurer to the insured or her assignee in settlement of the insured's bad faith or breach of contract claims cannot

be treated as money paid to a third party on a claim against the insured. Because USAA's payments in the bad faith action were made to settle claims *by* the insured's assignee rather than claims *against* the insured, there is no legal basis for USAA to recover those payments from New Hampshire as an equitable subrogee of the insured or an equitable indemnitee of New Hampshire. Since New Hampshire is not liable to USAA on the complaint, there is no basis for a judgment in favor of New Hampshire on its cross-complaint against Dr. Thomas for express indemnity.

## Disposition

The judgment is reversed and remanded with directions to enter judgment in favor of New Hampshire on USAA's complaint and in favor of Dr. Thomas on New Hampshire's cross-complaint. New Hampshire is awarded costs on appeal.

Kremer, P. J., and Huffman, J., concurred.

The petition of respondent United Services Automobile Association for review by the Supreme Court was denied February 27, 2002.