[No. F053336. Fifth Dist. July 29, 2008.]

GREAT AMERICAN INSURANCE COMPANIES, Plaintiff and Appellant,
v.
GORDON TRUCKING, INC., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

___

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I., II.C., II.D. and II.E. of the discussion.

**COUNSEL**

Law Office of Richard T. Ferko and Richard T. Ferko for Plaintiff and Appellant.

Crabtree, Schmidt & Jacobs and Michael R. Dennis for Defendants and Respondents.

OPINION

HILL, J.—Plaintiff, Great American Insurance Companies, appeals from a judgment entered in favor of defendant, Gordon Trucking, Inc., after defendant's motion for summary judgment was granted. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 14, 2002, a truck owned by defendant would not start. Art's Towing towed the truck to the repair yard of Bonander Truck, Inc., at approximately 7:00 p.m. that day. Defendant's truck was parked near two other trucks, one owned by plaintiff's insureds, the Gandys. While defendant's truck was parked at Bonander's, a fire damaged the three trucks parked in the Bonander yard.

Plaintiff filed its complaint, alleging that the fire originated in defendant's truck and damaged the Gandys' truck. The complaint alleges defendants were negligent in transporting defendant's truck and placing it near the Gandys' truck "in a condition where it was likely to ignite and cause damage to other vehicles and property," and defendant was negligent in the maintenance and upkeep of its truck.

Defendant moved for summary judgment, asserting that defendant did not breach any duty it owed to the Gandys and there was no causal connection between its maintenance of its truck and the fire. Plaintiff opposed the motion, contending defendant knew its truck had an electrical problem and there was "a factual issue as to the reasonableness of GORDON'S inspection and failure to activate the battery shut off switch." Plaintiff also argued that negligence could be presumed based on application of the doctrine of res ipsa loquitur.

The trial court granted defendant's motion for summary judgment, finding there was no triable issue of material fact concerning defendant's breach of a duty of care to plaintiff or causation of damage. Judgment was thereafter entered in favor of defendant and against plaintiff. Plaintiff appeals.

## DISCUSSION

Summary judgment is reviewed de novo. (*Hamburg v. Wal-Mart Stores, Inc.* (2004) 116 Cal.App.4th 497, 502 [10 Cal.Rptr.3d 568].) "As a summary judgment motion raises only questions of law regarding the construction and effect of supporting and opposing papers, this court independently applies the same three-step analysis required of the trial court. We identify issues framed by the pleadings; determine whether the moving party's showing established

facts that negate the opponent's claim and justify a judgment in the moving party's favor; and if it does, we finally determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.]" (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342 [67 Cal.Rptr.2d 726].) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor. [Citations.]" (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768–769 [107 Cal.Rptr.2d 617, 23 P.3d 1143].) We review the trial court's rulings on evidentiary objections by applying an abuse of discretion standard. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 [23 Cal.Rptr.3d 915].)

## I. *Allegations of the Complaint**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II. *Defendant's Facts and Evidence*

Defendant proffered 17 undisputed material facts in support of its motion. It asserted it acquired its truck in July of 2002, and put it into operation on August 15, 2002. On Saturday, December 14, 2002, the truck would not start for unknown reasons. Art's Towing towed the truck to Bonander's truck yard at approximately 7:00 p.m. The truck yard was closed and would not reopen until Monday. Defendant's truck was parked near a truck owned by plaintiff's insureds (the Gandys). Twenty-three hours later, about 6:00 p.m. on December 15, 2002, a fire started and burned defendant's truck, the Gandys' truck, and a third truck. The cause of the fire is unknown. Defendant's truck's only previous electrical problems had been repaired. According to the Gandys, defendant used its truck in a foreseeable manner and for its intended use, and was not warned by the manufacturer of any defect in the electrical system that would cause a fire. According to the Gandys, the truck "would have been purchased without an inspection that would have revealed any alleged defects which could have allegedly caused the fire." The Gandys' response to defendant's interrogatory asking for all facts on which the Gandys based their allegation that defendant knew or should have known its truck had electrical or other malfunctions apt to cause a fire identified the tow truck company and driver, and service technicians at Bonander truck service; it did not identify anyone at Gordon Trucking.

Plaintiff objected to some of the evidence proffered by defendant in support of its undisputed facts. Specifically, plaintiff objected to (1) defendant's

---

*See footnote, *ante*, page 445.

reliance on its own responses to interrogatories; (2) defendant's reliance on documents it produced in response to demands for production of documents, without further authentication of the documents produced; (3) use of the Gandys' interrogatory responses against plaintiff; and (4) use of allegations from the Gandys' unverified third amended complaint against plaintiff. At the hearing, the trial court indicated plaintiff's written objections had not been made in the proper form. Counsel for plaintiff then made his objections orally on the record.

In its minute order, the court noted it had not yet received the transcript of plaintiff's oral objections, and it ruled that it was "inclined to sustain Great American's objections to the interrogatory responses of all parties other than the Gandy plaintiffs." It ruled that the Gandys' discovery responses and the admissions in their complaint could be used against plaintiff, because plaintiff stepped into the shoes of the Gandys in this subrogation action. The court also noted that plaintiff relied in its own opposition on some of the same evidence to which it was objecting, apparently referring to maintenance records for defendant's truck, which it concluded was "fatal to Great American's opposition."

Defendant contends plaintiff failed to preserve its objections because it did not obtain a ruling on them; the court merely expressed an "inclination" to sustain certain objections. Although the court phrased its ruling as an "inclination" because it had not yet received a transcript of plaintiff's oral objections, it did rule on each of plaintiff's objections in its minute order. The court did not subsequently make any change to its ruling on the objections after receiving the transcript. Its ruling on the motion was presumably based on its consideration of only the evidence it ruled admissible. Thus, we conclude that the evidentiary rulings included in the court's minute order constituted the final rulings on the parties' evidentiary objections.

### A.  Defendant's interrogatory responses

■ "At the trial or any other hearing in the action, so far as admissible under the rules of evidence, the propounding party or *any party other than the responding party* may use any answer or part of an answer to an interrogatory *only against the responding party*." (Code Civ. Proc., § 2030.410, italics added.) Thus, the responding party may not use its own interrogatory responses in its own favor. The trial court did not abuse its discretion in sustaining plaintiff's objection to defendant's use of its own interrogatory responses as evidence supporting its statement of undisputed facts.

### B. *The Gandys' interrogatory responses*

Defendant offered responses by the Gandys to interrogatories as evidence that "[i]t is unknown why the truck would not start," that "[t]he cause of the fire is unknown," and that, when asked for "all facts upon which you base your allegation that Gordon knew or should have known that its [F]reightliner was defective and that it had electrical or other malfunction apt to cause a fire," the Gandys replied by identifying the "[t]ow truck Company and/or Driver, . . . Rip and Doug . . . , service technicians at Bonander Truck Service, Freightliner," without identifying any of defendant's personnel who had knowledge of any defects or malfunctions.

■ A defendant moving for summary judgment may rely on "factually devoid discovery responses" to show that the plaintiff's cause of action has no merit and to shift the burden to the plaintiff to demonstrate that a triable issue of one or more material facts exists as to that cause of action. (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590 [37 Cal.Rptr.2d 653].) Here, however, defendant relied on the "factually devoid discovery responses" of the Gandys, plaintiff's insureds, not on any discovery responses of plaintiff, in order to meet its burden of showing plaintiff had no facts to support its cause of action against defendant. The trial court overruled plaintiff's objection to the use of the Gandys' interrogatory responses, concluding that, because plaintiff stood in the shoes of its insureds, the Gandys' discovery responses could be used against plaintiff.

■ " 'Equitable subrogation permits a party who has been required to satisfy a loss created by a third party's wrongful act to "step into the shoes" of the loser and pursue recovery from the responsible wrongdoer. [Citation.] In the insurance context, the doctrine permits the paying insurer to be placed in the shoes of the insured and to pursue recovery from third parties responsible to the insured for the loss for which the insurer was liable and paid.' [Citation.] Because subrogation rights are purely derivative, an insurer cannot acquire anything by subrogation to which the insured has no right and can claim no right the insured does not have. [Citation.]" (*United Services Automobile Assn. v. Alaska Ins. Co.* (2001) 94 Cal.App.4th 638, 645 [114 Cal.Rptr.2d 449].) "The subrogated insurer is said to ' "stand in the shoes" ' of its insured, because it has no greater rights than the insured and is subject to the same defenses assertable against the insured." (*Travelers Casualty & Surety Co. v. American Equity Ins. Co.* (2001) 93 Cal.App.4th 1142, 1151 [113 Cal.Rptr.2d 613].)

Because the insurer is subject to the same defenses as the insured, the statute of limitations on the insurer's cause of action runs from the date of accrual of its insured's cause of action. (*Commercial Union Assurance Co. v.*

*City of San Jose* (1982) 127 Cal.App.3d 730, 734–735 [179 Cal.Rptr. 814].) Where the insurer intervenes in the insured's action to assert its subrogation claim, the five-year period for bringing the insurer's action to trial runs from the filing of the insured's complaint, not from the filing of the complaint in intervention. (*Bright v. American Termite Control Co.* (1990) 220 Cal.App.3d 1464, 1466 [269 Cal.Rptr. 793].) When the insured has released the third party, the subrogated insurer's claims are also released. (*Fireman's Fund Ins. Co. v. Maryland Casualty Co.* (1994) 21 Cal.App.4th 1586, 1596–1597 [26 Cal.Rptr.2d 762].) The insurer, however, is not limited by defects in the insured's complaint against the tortfeasor. (*Low v. Golden Eagle Ins. Co.* (2002) 101 Cal.App.4th 1354, 1363–1364 [125 Cal.Rptr.2d 155].) In *Low*, the insureds' complaint contained a prayer for only $25,000 in damages, although the body of the complaint alleged much higher damages. After the defendant's default judgment was entered, it was reduced to $25,000 because of the defective prayer. The court held that the insurer's subrogation complaint in intervention was not limited to that amount, because the insurer's complaint sought $130,000 in damages and gave the defendant adequate notice that the insurer sought that amount.

■ While a subrogated insurer's claims are subject to the same defenses as the insured's claims, we have been cited to no authority, and we have found none, indicating that the insurer is bound by every discovery response made by the insured during the litigation of the insured's claims against the third party tortfeasor. When the insured makes affirmative statements or admissions about the facts of his claim, particularly those facts within the insured's own knowledge, it may be appropriate to hold that the subrogated insurer is bound by those statements or admissions, because they define the insured's claim and the insurer stands in the insured's shoes in the subrogation action. But when the insured is asked for facts supporting his allegation regarding matters not within his personal knowledge, and he either represents that he has no knowledge of such facts or responds without identifying any such facts, there does not appear to be any basis for binding the insurer to that representation or factually devoid answer. The insurer can conduct its own investigation and discovery and make its own representations about the facts it learns; the insurer may develop facts of which the insured is unaware. Any opposing party may propound interrogatories directly to the insurer, to determine what facts the insurer is relying on to support its causes of action. Thus, when the insured is asked by interrogatory for all facts the insured is aware of that support some allegation, the subject of which is not a matter within the insured's personal knowledge, the insurer should not be bound by the insured's factually deficient answer. We hold that, under these circumstances, another party cannot use the *insured's* factually devoid answer to demonstrate that the *insurer* has no facts with which to prove its allegations.

■ Defendant cited the Gandys' interrogatory responses in support of its undisputed fact Nos. 4, 9, 10, 16, and 17. Each of these interrogatories seeks information about matters not within the personal knowledge of the Gandys. Fact Nos. 4, 10, 16, and 17 seek to establish the Gandys', and therefore plaintiff's, lack of facts concerning the cause of the fire and defendant's knowledge of any defect or malfunction in defendant's truck. Fact No. 9 concerns the time and place of the fire, and how long after defendant's truck had been parked at Bonander's the fire occurred. To the extent the Gandys' interrogatory responses cited by defendant in support of these facts are factually deficient, they may not be used by defendant to prove that plaintiff lacks facts or evidence to support its claims.

Moreover, the interrogatory responses cited in support of fact Nos. 4, 9, and 10 do not support those facts. Fact No. 4 states, "It is unknown why the truck would not start" on December 14, 2002. The interrogatories cited ask about "the incident." The Gandys' response indicates they interpreted "the incident" to mean the fire. Fact No. 10 asserts the cause of the fire is unknown. The interrogatories cited do not ask generally what caused the fire; they ask specifically for information about any malfunction or defect in a vehicle that caused the incident or contributed to the injuries sustained in the incident. The only other evidence cited in support of fact Nos. 4 and 10 was defendant's own interrogatory responses, to which the trial court sustained plaintiff's objection. Consequently, defendant presented no admissible evidence showing that the matters set out in fact Nos. 4 and 10 are undisputed.

In its response to fact No. 9, plaintiff did not dispute that a fire damaged the Gandys' truck. Plaintiff did not concede, however, the time of the fire or how long the trucks had been parked at Bonander's before the fire; the cited interrogatory responses by the Gandys did not provide that information. The only other evidence cited in support of fact No. 9 was specified allegations of the Gandys' third amended complaint. Even if those allegations were admissible against plaintiff, they also do not indicate when the fire occurred or how long any truck had been parked at the time. Except for the fact that a fire occurred and damaged the Gandys' truck, purported fact No. 9 is unsupported.

C.–E.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 445.

## *DISPOSITION*

The judgment is reversed with directions to vacate the order granting summary judgment and to enter a new order denying summary judgment. Plaintiff is awarded its costs on appeal.

Vartabedian, Acting P. J., and Wiseman, J., concurred.

A petition for a rehearing was denied August 21, 2008.