Filed 5/17/16  Ferraro v. Glendale Unified School Dist. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| | |
|---|---|
| JOHN FERRARO et. al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>GLENDALE UNIFIED SCHOOL DISTRICT,<br><br>    Defendant and Respondent. | B262428<br><br>(Los Angeles County<br>Super. Ct. No. EC059784) |


        APPEAL from a judgment of the Superior Court of Los Angeles County, William D. Stewart, Judge.  Affirmed.

        Lieber Williams & Labin, Stanley P. Lieber and Rachel K. DiBiase for Plaintiffs and Appellants.

        McCune & Harber, Stephen M. Harber and Dominic A. Quiller for Defendant and Respondent.

**INTRODUCTION**

On February 10, 2012, 15-year-old Drew Ferraro tragically committed suicide by jumping off the third-story roof of his high school. Plaintiffs John and Deana Ferraro,[1] Drew's parents and successors-in-interest, sued defendant Glendale Unified School District, contending defendant failed to adequately respond to harassment and bullying suffered by their son at school, and ultimately caused Drew's death. The trial court granted defendant's motion for summary judgment, concluding that plaintiffs failed to establish a triable issue of fact that defendant's negligence was the proximate cause of Drew's death. We affirm.

**FACTUAL AND PROCEDURAL HISTORY**

A.    *Complaint*

Plaintiffs filed their lawsuit against defendant on December 7, 2012. Their complaint alleged that Drew enrolled in ninth grade at Crescenta Valley High School, part of the Glendale Unified School District, in September 2010. In November 2010, he began to be harassed by "certain female assailants" at school, including through "harassing and intimidating text messages," "physical/in-person altercations" and "the use of electronic media such as Facebook." Plaintiffs claimed Drew was the target of harassment and bullying because of "his small size, demeanor and style," his "'non-conforming' manner of dress," and because he had been diagnosed with major depressive disorder. Plaintiffs further claimed that Drew was "harassed for not liking a certain female classmate," and was "consistently" called various derogatory names.[2]

In addition to generally alleging ongoing harassment and bullying, plaintiffs identified several specific incidents in the complaint. On January 18, 2011, Drew was

_____

[1]We refer to members of the Ferraro family individually by first name because they share a surname. No disrespect is intended.

[2]While not clearly articulated in their complaint, plaintiffs later argued that Drew was harassed for "the perception of being gay." Plaintiffs did not allege that Drew identified as gay, but they contended that he was called various homophobic slurs by his assailants and, on one occasion, was "forced to look at some football players' private areas because of their contention that he was gay."

"spat on, physically pushed, and slapped on the back" by other students at school; plaintiffs alleged Drew had no choice "but to verbally attack the assailants in attempts to terminate the abuse." Plaintiffs, Drew, and Drew's sister filed harassment reports with the school regarding the incident, but plaintiffs alleged defendant "took no course of action" in response.

Next, on May 2, 2011, plaintiffs alleged Drew was "attacked and hit in the face by one of the original harassers" and was further threatened by an associated group of male students, forcing Drew to fight back "for his own survival." Drew was suspended from school for a week as a result. Upon his return to school on May 11, 2011, plaintiffs alleged Drew was again punched in the face "by an assailant." Plaintiffs contended they complained to the school and Drew completed incident reports following each incident.

As Drew entered tenth grade in August 2011, he continued to face a "hostile and unsafe environment" at school. In October 2011, Deana found some text messages from Drew that "contemplated suicide because of the 'haters' at School." Plaintiffs alleged Drew was diagnosed with depression, and his depression was "exacerbated by the environment at School and Defendant['s] failure to take any meaningful action." Drew's grades began to slip and he was suspended from the football team in November 2011.

Plaintiffs alleged that when the second semester of tenth grade began in January 2012, Drew's academic performance continued to decline. The continued harassment caused Drew to experience worsening anxiety attacks and "further signs of fear and dislike for School." On February 10, 2012, Drew "left third period early and did not show up for fourth period." At approximately 12:22 p.m., he climbed a tree to gain access to the school roof and jumped off, "killing himself instantly."

Plaintiffs further alleged that defendant was "placed on notice of the harassment and bullying" that Drew encountered at school "on a daily basis," but defendant "implemented weak investigation techniques" and took "little to no action" to curtail the abuse. Based on defendant's purported failures, plaintiffs asserted causes of action for violations of various sections of the Education Code, violation of the Unruh Civil Rights Act (Civil Code §§ 51, 51.5), negligence, and wrongful death.

B.      *Summary Judgment*

1.      *Defendant's Motion*

Defendant moved for summary judgment or, in the alternative, summary adjudication.  As relevant here, defendant provided evidence to support its claim that Drew engaged in verbal and physical altercations with a female student after he broke up with her.  Defendant contended that the school responded appropriately to each incident, including by holding a "conflict mediation" with the two students and an assistant principal in January 2011, suspending Drew and the other two students involved in the physical altercation on May 2, 2011 and requiring them to agree to leave each other alone, and suspending the student who punched Drew on May 11, 2011.  Further, defendant argued there was no evidence of any bullying or harassment, or any report to the school of such behavior, between May 2011 and Drew's death in February 2012.  Defendant also offered the deposition testimony of Drew's English teacher, who testified she had not noticed anything unusual about Drew on the day of his death and that he left class with the other students when class ended.  Defendant also pointed to undisputed evidence that Drew wrote four suicide notes before he died, but there was no evidence as to when they were written.

Based on this evidence, defendant argued that any failure on its part to respond to alleged bullying was not the proximate cause of Drew's suicide.  The parties agreed on the relevant standard of causation under California law in a suicide case:  that a defendant's negligence may give rise to liability for a suicide where the negligent acts cause the decedent to suffer from an uncontrollable suicidal impulse.  (See *Tate v. Canonica* (1960) 180 Cal.App.2d 898, 915 (*Tate*).)  Defendant argued the undisputed evidence established that Drew's decision to commit suicide was not based on an uncontrollable impulse, but rather by his independent decision to end his life.

2.      *Opposition, Supplemental Opposition, and Response*

Plaintiffs filed an initial opposition to summary judgment in June 2014.  On the issue of proximate cause, plaintiffs argued that Drew committed suicide because he encountered daily bullying and harassment up to the day of his death and defendant

4

"failed to do anything about it." In support of their allegation that Drew was bullied on the day of his death, plaintiffs cited two pieces of evidence: first, Deana's deposition testimony that one of Drew's friends told her within a few months of his death that he had "walked out" of his third period English class because he "was called a name"; and second, that Drew had an "anarchy symbol" on his hand when he died, which plaintiffs claimed he drew only "when he was frustrated with School."

At the initial hearing on the motion, the court issued a tentative ruling granting summary judgment because "[t]he undisputed facts establish that Drew Ferraro's mental condition was such that he was able to realize the nature of the act of suicide and he had the power to control the impulse." The court cited *Walsh v. Tehachapi Unified School District* (E.D. Cal. 2014) 997 F.Supp.2d 1071 (*Walsh*)[3] regarding plaintiffs' burden of proof on this issue. In contrast to the *Walsh* plaintiffs, the court noted plaintiffs here had not claimed (much less established) that Drew's brain at 15 years old was immature and undeveloped and thus rendered him "particularly vulnerable and susceptible to psychological disorder, suicidal ideation, and the commission of suicide," resulting in Drew having "an uncontrollable impulse to commit suicide." The court granted plaintiffs' request for a continuance to obtain additional evidence from an expert on this issue.

On October 8, 2014, plaintiffs filed a supplemental opposition that focused on a declaration from their expert, psychiatrist Dr. Carole Lieberman. Based on her review of the case materials and her training and experience, Dr. Lieberman's declaration set forth opinions ranging from the habits of bullies (that "bullies smell blood" and here "they got more blood than they bargained for"), to the reason the bullying began (that Drew's ex-girlfriend was "[h]urt, furious, and out for revenge," so she "led her posse of friends . . . in a daily all-out war to destroy Drew"), and thereafter the school's purported failure to protect Drew from the "incessant bullying." Dr. Lieberman also stated that Drew "bolted out" of his English class "before the bell, after a classmate bullied him by calling out one

---

[3]We discuss *Walsh infra*, along with related authority regarding the standard for determining whether a party's negligence was the proximate cause of a suicide.

5

taunt too many. It was the final straw that sent him careening towards the roof that day, no longer able to resist the impulse to commit suicide."

Dr. Lieberman also opined that Drew's 15-year-old brain was "undeveloped" and therefore "by its anatomy and physiology, was less likely to be able to resist impulses such as committing suicide," and further, that "Drew's brain was particularly vulnerable because it had been damaged on several occasions" in his youth. She also noted that Drew had been diagnosed with depression in late 2011 and had been prescribed an anti-depressant. Dr. Lieberman then concluded that "the incessant bullying allowed to continue and fester at Crescenta Valley High School, resulted in a deepening depression, which was then diagnosed as Major Depressive Disorder. Records from [Drew's] medical and psychiatric visits indicate that although Drew had had suicidal ideation, he had no plan, no intent, and was not imminently suicidal. On February 10, 2012, however, this changed in a heartbeat, when Drew suffered an uncontrollable impulse to commit suicide and did not have the power to control it."

Defendant filed a response in support of its motion, which included an expert declaration and extensive objections to Dr. Lieberman's declaration.[4]

### 3. *Trial Court's Ruling*

The trial court issued its written opinion granting summary judgment on February 4, 2015. As relevant here, the court found defendant had met its initial burden to establish that Drew did not have an uncontrollable impulse to commit suicide, citing evidence that Drew discussed suicide in text messages to a friend several days before his death, that he told his mother he was not "thinking about doing anything like that" during a conversation about suicide, and that he "drafted four suicide notes." As a result, the court found "[t]his evidence indicates that Drew Ferraro's mental condition was such that he was able to realize the nature of the act of suicide and he had the power to control the impulse, if he desired," Therefore, Drew's "act of suicide was an independent

---

[4]Defendant retained Lester Zackler, M.D., the same expert retained by the plaintiffs in *Walsh*. Here, Dr. Zackler opined that Drew "did not have an uncontrollable urge to commit suicide." The court did not discuss Dr. Zackler's opinion in its ruling.

intervening force" such that defendant's allegedly negligent conduct was not the proximate cause of the suicide.

Turning to plaintiffs' burden, the court noted that although plaintiffs had provided "numerous facts about the bullying that occurred to Drew Ferraro and their efforts to advise the Defendant of the bullying and to obtain assistance with halting the bullying," such evidence "does not concern the issue of whether Drew Ferraro had an uncontrollable impulse to commit suicide." Next, the court reviewed the evidence proffered through Dr. Lieberman's declaration. The court denied defendant's objection for the purposes of summary judgment that Dr. Lieberman was not qualified to render an opinion regarding the development of a 15-year-old brain and the causes of suicidal ideation.[5]

However, the court rejected Dr. Lieberman's opinion that Drew had no prior plan or intent to commit suicide, but "this changed in a heartbeat" on February 10, 2012, as a result of "one taunt too many in Drew's English class," causing "an uncontrollable impulse to commit suicide" which "sent him bolting out of the classroom, and up to the roof, where he jumped to his death." The court found Dr. Lieberman offered "no facts to support her conclusion that the 'taunt' created a suicidal ideation in Drew Ferraro or that the suicidal ideation was uncontrollable." Instead, her conclusion that Drew "in a heartbeat developed an uncontrollable suicidal ideation on February 10, 2012 appears to rest on guess, surmise or conjecture because there is no admissible evidence that a taunt occurred in Drew Ferraro's English class which created a suicidal ideation." Thus, the court excluded Dr. Lieberman's opinion that Drew "developed a suicidal ideation as a result of a taunt in his English class . . . because it is without evidentiary support and it is based on speculation." Accordingly, the court sustained defendant's objections to the opinions offered by Dr. Lieberman that, among others: (1) Drew had an irresistible impulse to commit suicide and was unable to control it; (2) Drew was bullied and "taunted" in his English class on the day of his death and then "bolted out" of class

_____

[5]However, the court noted "a paucity of specific facts" in Dr. Leiberman's declaration or her attached Curriculum Vitae to demonstrate the necessary training or expertise to support such opinions.

"before the end of the bell"; and (3) Drew "committed suicide to show that he could stop the bullying since [defendant] refused to stop the bullying."

The court concluded that defendant "was not the proximate cause of the suicide of Drew Ferraro because [t]here is no admissible evidence to support Dr. Lieberman's opinion that Drew Ferraro had an uncontrollable impulse to commit suicide at the time of this suicide." Accordingly, the court granted summary judgment for defendant. Plaintiffs timely appealed.

## DISCUSSION

In the sole issue on appeal, plaintiffs argue they provided sufficient evidence to raise a triable issue that on February 10, 2012, Drew suffered an uncontrollable impulse to commit suicide caused by defendant's negligent failure to respond to the bullying Drew suffered. We conclude that summary judgment was proper because plaintiffs have not challenged the exclusion of Dr. Lieberman's key expert opinions on appeal and have identified no other evidence to meet their burden.

### A.  *Applicable Legal Standards*

#### 1.  *Summary Judgment*

We review the trial court's summary judgment ruling de novo. (*Scheiding v. Dinwiddie Construction Co*. (1999) 69 Cal.App.4th 64, 69 (*Scheiding*).) "'In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [plaintiff's] evidentiary submission while strictly scrutinizing [the defendant's] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor.' [Citation.]" (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 100.)

A defendant moving for summary judgment must make a prima facie showing that there are no triable issues of fact in order to meet its initial burden of production. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 861; see also Code Civ. Proc. § 437c, subd. (c).) "[A] defendant moving for summary judgment [must] present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Id*. at p. 854, fn. omitted.) Once the defendant has

8

met that burden, the burden shifts to the plaintiff to make a prima facie showing that a triable issue of material fact exists. (*Id*. at p. 850.) "The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show . . . a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . .' [citations].)" (*Scheiding*, *supra*, 69 Cal.App.4th at p. 69.)

### 2. *Negligence as Proximate Cause of Suicide*

""'The doctrine of proximate cause limits liability; i.e., in certain situations where the defendant's conduct is an actual cause of the harm, he will nevertheless be absolved because of the manner in which the injury occurred. Thus, where there is an independent intervening act which is not reasonably foreseeable, the defendant's conduct is not deemed the 'legal' or proximate cause.'" [Citation.]" *Lombardo v. Huysentruyt* (2001) 91 Cal.App.4th 656, 666.) In *Tate, supra*, 180 Cal.App.2d 898, the seminal California case, the court analyzed whether a party's negligence could be established as the proximate cause of a suicide. The court noted that historically, suicide had been viewed as an intervening act that always broke the chain of causation, precluding liability for another party's negligence as a cause of the suicide. (*Id*. at pp. 901-903.) However, the court adopted an exception: "[W]here the negligent wrong only causes a mental condition in which the injured person is able to realize the nature of the act of suicide and has the power to control it if he so desires, the act then becomes an independent intervening force and the wrongdoer cannot be held liable for the death. On the other hand, if the negligent wrong causes mental illness which results in an uncontrollable impulse to commit suicide, then the wrongdoer may be held liable for the death." (*Id*. at p. 915.) Further, the court explained that it would "not make any difference that the decedent 'knew what he was doing.' If defendant is to avoid liability, the decedent's act must be voluntary, not in that sense but in the sense that he could, in spite of his mental illness, have decided against suicide and refrained from killing himself." (*Ibid*.)

The *Tate* rule was most recently applied in *Walsh*, *supra*, 997 F.Supp.2d 1071, another case involving teen suicide and bullying. In *Walsh*, a 13-year-old student committed suicide and his mother sued the school district, claiming that her son had been

harassed and bullied at school for several years, including on the day of his death, because he was gay.  (*Id*. at p. 1073.)  The district court found that defendants had met their initial burden on summary judgment to show that the decedent "fully realized the nature and consequences of his decision to commit suicide and had the ability to control his actions," based on evidence that prior to his death, the student had engaged in lengthy text messages with friends discussing his intention to commit suicide, written two suicide notes, and carried out a series of steps to complete his suicide plan.  (*Id*. at p. 1080.)

However, the court concluded that plaintiff in turn met her burden to demonstrate a triable issue of fact, based on the declaration of her expert, Dr. Zackler.  Specifically, Dr. Zackler opined (1) that the decedent suffered from an "adjustment disorder" and that the defendants' negligence was a "substantial factor" in causing that disorder, and (2) "various frontal lobe circuits in the brain, which are involved in controlling and inhibiting behavior, are not fully developed in a thirteen-year-old brain," which "rendered Decedent particularly vulnerable and susceptible to such adjustment disorder, suicidal ideation, and the commission of suicide."  (*Walsh*, *supra*, 997 F.Supp.2d at pp. 1080-1081.)  As a result of the combination of these factors, Dr. Zackler concluded that the decedent "(1) had an uncontrollable impulse to commit suicide; and (2) did not have the power to control the impulse to commit suicide."  (*Walsh, supra*, 997 F.Supp.2d at p. 1081.)

Although the court noted that "Dr. Zackler's declaration is sparse on factual detail and his opinion regarding causation is conclusory," it nevertheless concluded that the declaration, when read together with Dr. Zackler's expert report and deposition testimony, created "a genuine dispute as to whether Defendants' actions (or inactions) caused Decedent to suffer from an uncontrollable impulse to commit suicide."  (*Walsh, supra*, 997 F.Supp.2d at p. 1081.)  The court therefore denied summary judgment.  (*Id*. at p. 1082.)

B.     *Plaintiffs Do Not Challenge the Trial Court's Exclusion of Dr. Lieberman's Opinions*

We turn now to the merits of plaintiffs' appeal.  Plaintiffs relied on Dr. Lieberman's expert declaration in their supplemental opposition to summary judgment,

10

contending that her expert testimony satisfied their burden to establish that Drew suffered an uncontrollable impulse to commit suicide immediately before his death, and that the impulse was triggered by the bullying defendant had failed to control. Despite the clear import of this declaration, on appeal plaintiffs have not challenged any of the trial court's rulings excluding Dr. Lieberman's opinions, including the critical ruling excluding her opinion that Drew suffered an uncontrollable impulse to commit suicide. Notably, although plaintiffs' opening brief relied heavily on the excluded portions of Dr. Lieberman's declaration, plaintiffs did not argue that the trial court erroneously excluded any of those opinions or that it abused its discretion in doing so.[6] As such, plaintiffs have failed to demonstrate any error in the trial court's evidentiary rulings and they remain intact. (See *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16 [to demonstrate error, "appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error"]; *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 647 [a point asserted without argument and authority for the proposition "is deemed to be without foundation and requires no discussion by the reviewing court"]; *Berger v. Godden* (1985) 163 Cal.App.3d 1113, 1117 ["failure of appellant to advance any pertinent or intelligible legal argument . . . constitute[s] an abandonment of the [claim of error"].)

Plaintiffs belatedly suggest in their reply that the evidentiary objections should be reviewed de novo and therefore the trial court's rulings do not control. As an initial matter, plaintiffs have forfeited their right to raise this argument by failing to present it in their opening brief. (See, e.g., *Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6 ["[a]rguments presented for the first time in an

---

[6]In fact, the *only* reference in plaintiffs' opening brief to the court's exclusion of Dr. Lieberman's opinions is a single sentence in the procedural background section noting that the trial court ruled "Dr. Lieberman offered no evidentiary support for her opinion that in a heartbeat on February 10, 2012, Drew suffered an uncontrollable impulse to commit suicide." Plaintiffs' reliance on Dr. Lieberman's excluded opinions without any further reference to the fact that they were excluded is confusing at best, if not misleading.

11

appellant's reply brief are considered waived"]; *Holmes v. Petrovich Development Co.* (2011) 191 Cal.App.4th 1047, 1064, fn. 2 ["argument is forfeited" where "it is raised for the first time in [appellant's] reply brief without a showing of good cause"].)

Additionally, plaintiffs misstate the applicable standard of review. Although our review of a summary judgment motion is de novo, we review a lower court's rulings on evidentiary objections for abuse of discretion. (See, e.g., *Great American Ins. Cos. v. Gordon Trucking, Inc.* (2008) 165 Cal.App.4th 445, 449; *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122; see also *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534 [reciting general rule that "'on appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained' [citation]".)

Finally, regardless of the standard of review, plaintiffs must identify some basis to overcome defendant's objections to their evidence. (See, e.g., *DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 679 [party challenging the ruling has burden to establish abuse of discretion on appeal].) They have failed to do so here. As noted above, plaintiffs did not discuss this issue in their opening brief. On reply, plaintiffs merely state that "the evidence should be considered by this Court" without further explanation or citation. As such, plaintiffs have not satisfied their burden to establish why any of the trial court's rulings sustaining defendant's objections constituted an abuse of discretion. Indeed, even under a de novo review plaintiffs would fail, as they have provided no basis to counter defendant's objections that Dr. Lieberman's opinions, among other things, lacked foundation, assumed facts not in evidence, and were based on unreliable hearsay and speculation. We therefore examine only the evidence admitted by the trial court for the purposes of this appeal.

C.      *No Other Evidence To Establish Proximate Cause*

Even without the excluded portions of Dr. Lieberman's declaration, plaintiffs contend they have presented sufficient evidence to raise a triable issue of fact that Drew

suffered an uncontrollable impulse to commit suicide on the day of his death. We conclude they have not.

Plaintiffs assert they have admissible evidence of the following points: (1) the immaturity and vulnerability of Drew's brain, established through admitted testimony by Dr. Lieberman; (2) Drew's depressed mental state; (3) defendant's inadequate response to the bullying and harassment of Drew; and (4) a "taunt" aimed at Drew during his English class on the day of his death, based on Deana's deposition testimony about what she was told by one of Drew's friends. Putting aside defendant's hearsay objections to the latter evidence,[7] we conclude that even if admitted, this evidence would be insufficient to establish a triable issue. Crucially, Dr. Lieberman's excluded opinion offers the *only* evidence connecting Drew's purportedly immature and vulnerable brain, his depression, and the alleged taunt, and concluding that these factors together triggered an irresistible impulse to commit suicide that Drew was unable to control. Without Dr. Lieberman's opinions, plaintiffs have no evidence to establish that Drew had an uncontrollable impulse to commit suicide. (See *Tate, supra*, 180 Cal.App.2d at p. 915; *Walsh, supra*, 997 F.Supp.2d at p. 1081; see also *Corales v. Bennett* (9th Cir. 2009) 567 F.3d 554, 573 [affirming summary judgment on negligence claim where plaintiffs' expert report "does not give an opinion regarding whether [decedent] had an uncontrollable impulse to commit suicide"].) Indeed, it was the need for just this evidence that led plaintiffs to seek a continuance to obtain expert testimony on this issue. As such, plaintiffs cannot raise a triable issue as to proximate cause and summary judgment was properly granted.

---

[7]It does not appear from the record that the trial court ruled on this objection and we need not reach that issue here. We note, however, that there is no evidence in the record suggesting which student made the purported remark or how Drew was "taunted."

## DISPOSITION

We affirm the order granting summary judgment.  Defendant is awarded its costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


EPSTEIN, P. J.


MANELLA, J.

14