Filed 10/21/25  Southwest Law Center v. Perez CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| SOUTHWEST LAW CENTER, | B338881 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC695768) |
| v. | |
| CHARLES PEREZ, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Michael C. Small, Judge.  Affirmed.

Southwest Legal Group, Anthony R. Lopez, Jr. for Plaintiff and Appellant.

Robberson Schroedter, Rachel M. Garrard, for Defendant and Respondent.

# I. INTRODUCTION

Plaintiff Southwest Law Center appeals from a summary judgment in favor of defendant Charles Perez. According to plaintiff, the trial court erred by failing to consider defamatory statements made after the filing of its complaint and abused its discretion by excluding testimony from an opposition declaration and facts from plaintiff's supplemental interrogatory responses. We affirm.

# II. FACTUAL AND PROCEDURAL BACKGROUND

## A. *Parties' Prior Relationship*

Defendant was the president and sole shareholder of Medical Acquisition Company, Inc. (Acquisition), a lien management and medical funding company that purchased accounts receivable and associated lien rights of medical providers, hospitals, and surgery centers.

Plaintiff was a law firm representing individual plaintiffs with personal injury claims against third parties. Since approximately 2008, Acquisition had physician clients who provided medical treatment to plaintiff's personal injury clients.

On December 19, 2014, Acquisition filed a complaint against plaintiff and others for breach of contract and common counts (Acquisition action). The operative second amended complaint asserted various causes of action premised on an

allegation that plaintiff failed to pay medical liens owed on cases involving over a dozen of plaintiff's personal injury clients.[1]

B.    *Defamation Action*

On February 28, 2018, while the Acquisition action was ongoing, plaintiff filed a complaint against defendant, asserting two causes of action for slander and defamation.  Each claim was based on the following factual allegations:  "During a lunch meeting, [defendant] engaged in making false, destructive and defamatory rumors and misstatements about [plaintiff] to relevant parties in the [C]ounty of Los Angeles . . . .  [¶]  . . . In furtherance of [defendant's] plan to tarnish [plaintiff's] reputation . . . , [defendant] slandered [plaintiff] by announcing at a lunch meeting with an individual who [did] business with [plaintiff] that [plaintiff did] not pay its doctors.  [Defendant] stated at the lunch meeting that he was in the process of obtaining a judgment against [plaintiff] for $22 million for interfering with [defendant's] business relationships with certain doctors.  [¶]  . . . [Defendant] made the . . . statements with the specific intent to injure [plaintiff] and without any reasonable basis for believing them to be true."

According to plaintiff, "[a]s a proximate result of the . . . statements[, plaintiff] . . . suffered loss to [its] reputation, shame, mortification, and hurt feelings."  Plaintiff prayed for compensatory damages of at least $20 million, as well as punitive damages.

---

[1]    On August 7, 2019, the trial court granted Acquisition's motion for summary adjudication on the third cause of action for common counts as to liability only.

C.    *Summary Judgment Motion*

On December 18, 2023, defendant filed a summary judgment motion arguing, among other things, that plaintiff's written discovery responses failed to provide facts sufficient to make a prima facie showing on the first element of his two claims, namely, that defendant published the alleged defamatory statements. According to defendant, plaintiff could not prove that defendant made any of the alleged defamatory statements because plaintiff had not produced any evidence that the statements were made, while defendant had submitted a declaration stating he did not make the alleged defamatory statements.

More specifically, defendant explained that plaintiff's responses to special interrogatory nos. 1, 2, and 3—asking where and when the alleged lunch meeting took place—stated only that the meeting "took place in a restaurant in or about Newport Beach" sometime "in or about 2017." Plaintiff's response to interrogatory no. 4—asking for the identity of each person who attended the alleged lunch meeting—stated that defendant and "a doctor were present at the alleged lunch meeting," adding that plaintiff was "diligently attempting to obtain the name and the last known address of the doctor." Plaintiff's response to interrogatory no. 6—asking for the identity of the "'individual who [allegedly did] business with [plaintiff]'"—stated that "Fardad Mobin, M.D. ha[d] knowledge of [plaintiff's] allegations contained in the complaint."

Plaintiff's responses to interrogatory nos. 13 through 16 and document demands nos. 4, 5, 7, and 8—asking for the identity and production of all communications and documents

4

relating to any harm or loss plaintiff suffered—identified two documents: (1) an April 10, 2019, letter from plaintiff to Dr. Mobin; and (2) the transcript of the January 8, 2019, deposition of Dr. Mobin taken by plaintiff in the Acquisition action.

The April 10, 2019, letter, which defendant submitted in support of his motion, was a response from plaintiff's office to a lawyer, regarding "Dr. Mobin's [a]ccounts with [plaintiff]," and referenced the status of 22 accounts the doctor had with plaintiff. The letter did not include any reference to the allegedly defamatory statements. In the deposition transcript, excerpts of which defendant also submitted with his motion, Dr. Mobin testified about a recent conversation with defendant, in either November or December 2018, during which the doctor told defendant that plaintiff had outstanding accounts payable to him of $200,000. In response, defendant told Dr. Mobin that he was "not the only surgeon that [plaintiff had] failed to pay, and there [were at] least two or three other surgeons [who were] in the same condition as [Dr. Mobin who had] outstanding cases . . . [s]ome of which [had] . . . settled or [had] been tried, but the surgeons were not notified regarding the status of the case, and they were never paid." Defendant also told Dr. Mobin during the phone conversation that "one of [plaintiff's] partners had actually admitted to forging signatures on checks," but Dr. Mobin could not remember the partner's name.

In his declaration, defendant testified that he "did not attend a lunch meeting, or other meeting, with any doctor in or about Newport Beach, California, in or about 2017. [¶] More specifically, [he] did not make a statement to any doctor during a lunch meeting, or other meeting, in Newport Beach, California, in

or about 2017 that (1) [plaintiff did] not pay its doctors, and (2) that [he] was in the process of obtaining a judgment against [plaintiff] for $22 million for interfering with [his] business relations with certain doctors."

D.    *Opposition*

In its February 20, 2024, opposition, plaintiff argued that there were triable issues of material fact regarding two statements made by defendant.  According to plaintiff, its evidence showed that defendant told Dr. Mobin over lunch in Newport Beach in 2017 that plaintiff did not pay its doctors and also told Dr. Mobin in a telephone conversation in either November or December 2018 that, in addition to not paying Dr. Mobin, plaintiff had not paid other doctors and that one of plaintiff's partners had forged checks.

Plaintiff supported its opposition with, among other documents:  the declaration of plaintiff's owner, attorney Anthony Lopez, Jr.; excerpts from Dr. Mobin's January 8, 2019, deposition testimony in the Acquisition action; a copy of its supplemental interrogatory responses; excerpts of defendant's recent deposition testimony; and the declaration of Gelly Valero, plaintiff's office manager.

In his declaration, attorney Lopez testified that defendant, through Acquisition, referred Dr. Mobin to plaintiff to provide treatment to plaintiff's personal injury clients on a lien basis. Dr. Mobin subsequently treated dozens of plaintiff's clients on a lien basis but, in approximately 2017, he refused to accept any of plaintiff's new patients without ever giving plaintiff a reason for his refusal.  Attorney Lopez "believe[d]," however, that Dr. Mobin

6

refused to treat plaintiff's patients due to a lunch conversation Dr. Mobin had with defendant in 2017 in Newport Beach, California.  Attorney Lopez further testified that he was the only partner of plaintiff and he had never forged a check.

In its supplemental response to defendant's special interrogatories seeking the identity of each person who attended the 2017 Newport Beach lunch meeting, plaintiff added that it "reasonably believe[d]" that defendant and Dr. Mobin were present at the meeting.  In its supplemental response to the interrogatory asking about the harm or loss plaintiff suffered, plaintiff added that there were "[t]elephone calls between [defendant] and Dr. Mobin in approximately 2018 wherein [defendant] falsely accused unnamed partners of [p]laintiff of forging checks.  These statements were also made to other physicians according to the deposition testimony of Dr. Mobin.  These calls took place after the lunch meeting between Dr. Mobin and [defendant] in Newport Beach in 2017, in which [defendant] told Dr. Mobin [p]laintiff does not pay its bills."  (Boldface omitted.)  Plaintiff also responded to the interrogatory seeking communications about any harm suffered by plaintiff by adding that "Dr. Mobin verbally told  . . . Valero that [defendant] told him [plaintiff] did not pay medical bills."  (Boldface omitted.)

In the excerpts from defendant's recent deposition, defendant testified that Acquisition began working with plaintiff in 2008.  Plaintiff subsequently began working with Dr. Mobin through its relationship with Acquisition.  Defendant did not recall working with Dr. Mobin in 2017, but he had a personal relationship with him during that time and they were in contact by phone at least once a month.  Defendant did not recall meeting

7

in person with Dr. Mobin in 2017, but recalled speaking with him at least once in 2018.

Defendant could not recall whether, between 2008 and his deposition, plaintiff had failed to pay specific medical liens that Acquisition held, but he believed they may have failed to pay more than one such lien. Defendant also acknowledged that he had a conversation with Dr. Mobin between the end of 2018 and the beginning of 2019 during which he told the doctor that Acquisition had sued plaintiff, but he did not recall telling Dr. Mobin during the conversation whether he believed plaintiff had forged checks.

In his declaration in support of plaintiff's opposition to defendant's motion for summary judgment, Valero testified that he was plaintiff's office manager for several years. During the course of his employment with plaintiff, Valero met with defendant on multiple occasions, including at a lunch meeting in Newport Beach several years prior during which defendant told Valero that he loaned money to Dr. Mobin to facilitate the purchase of Dr. Mobin's first home and that he had also helped Dr. Mobin's wife successfully apply for acceptance into USC Medical School. Valero saw Dr. Mobin as a patient in 2017 due to back and neck pain. Valero's declaration concluded with the following sentence, which comprised paragraph 6 of his declaration: "I learned that [defendant] had told Dr. Mobin at a lunch meeting in approximately 2017 that [defendant] told Dr. Mobin [plaintiff] did not pay medical bills."

8

E. *Reply*

In his reply brief, defendant argued, among other things, that the relevant facts in the declarations of attorney Lopez and Valero were not based on personal knowledge and were therefore inadmissible because they lacked foundation and constituted hearsay. He also argued that plaintiff's supplemental interrogatory responses could not be relied upon to raise a triable issue of fact and that they were also inadmissible because they showed that they were based on the reasonable belief of attorney Lopez and not on personal knowledge. And, defendant maintained that the late 2018 telephone conversation between defendant and Dr. Mobin did not raise a triable issue of fact concerning the two claims pleaded in the complaint because the conversation occurred months after the filing of the complaint.

Defendant supported his reply with written objections to plaintiff's opposition evidence, including foundation and hearsay objections to the declarations of attorney Lopez and Valero.

Defendant also submitted the declaration of Dr. Mobin in which he testified as follows: "I did not attend any lunch meeting, or other meeting, with [defendant] in or about Newport Beach, California, in or about 2017. [¶] Other than to what I testified during my January 8, 2019, deposition in the [Acquisition action, defendant] did not make any other statement to me regarding [plaintiff] not paying its doctors or [plaintiff] forging checks."

9

F.    *Ruling*

On March 5, 2024, the trial court held a hearing on the summary judgment motion and, following argument, took the matter under submission. On March 18, 2024, the court issued a written ruling granting the motion.

The trial court found that plaintiff "did not present any admissible evidence that contradicts the denials in [defendant's] declaration. Accordingly, [defendant] is entitled to summary judgment on [plaintiff's] claim that [defendant] made the slanderous and defamatory statements about [plaintiff] that [plaintiff] alleges that [defendant] made."

As to the supplemental interrogatory responses identifying Dr. Mobin as the doctor who attended the 2017 Newport Beach lunch meeting, the trial court explained, "In those responses, [plaintiff] asserted, for the first time in the life of the case, that Dr. Mobin was the person to whom [defendant] made the defamatory statements about [plaintiff] at a lunch meeting in Newport Beach in 2017. The hitch here for [plaintiff] is that its own discovery responses are inadmissible to create a disputed issue of material fact . . . . [Citations.] In any event, Dr. Mobin submitted a declaration . . . in which he denied attending any lunch or other meeting with [defendant] in Newport Beach in 2017. . . . The inadmissible . . . supplemental responses to [defendant's] special interrogatories cannot be used by [plaintiff] to refute Dr. Mobin's declaration."

As to the admissibility of Valero's statement in paragraph 6 of his declaration stating that he "learned that [defendant] had told Dr. Mobin at a lunch meeting in approximately 2017" that "[plaintiff] did not pay medical bills," the trial court explained,

10

"Nothing in Valero's declaration places him at a lunch meeting with [defendant] and Dr. Mobin in 2017, and [plaintiff] does not contend otherwise. . . . Paragraph 6 does not state from whom Valero learned what [defendant] allegedly said to Dr. Mobin. The absence of the identity of that speaker renders Valero's statement in paragraph 6 . . . inadmissible hearsay. As such, paragraph 6 does not counter [defendant's] declaration denying he made the alleged defamatory statements about [plaintiff] to anyone in Newport Beach in 2017, and cannot create a disputed issue of material fact . . . ."

The trial court also declined to consider attorney Lopez's declaration testimony that he believed Dr. Mobin stopped treating plaintiff's patients because of statements made by defendant to the doctor at the 2017 lunch meeting. The court reasoned that "Lopez's statement of what he 'believes' is . . . inadmissible on the ground that it reflects a lack of personal knowledge of what was said at the lunch meeting and rests on hearsay statements made to him by an unidentified third party."

Finally, the trial court concluded that plaintiff could not rely on Dr. Mobin's deposition testimony about the late 2018 telephone conversation with defendant during which defendant said one of plaintiff's partners had forged checks: "Summary judgment motions are framed by the parties' pleadings because it is the allegations in the pleadings to which summary judgment[ ] motion[s] are directed. [Citations.] The party moving for summary judgment need not refute a theory or claims that exceed the boundaries of the allegations contained in the nonmoving party's pleadings. [Citation.] [¶] [The] complaint does not allege. . . that [defendant] made slanderous and defamatory statements in November or December 2018 about

11

[plaintiff's] forging of checks.  Nor could the complaint make any such allegations.  After all, the complaint was filed in January 2018, well before the two-month window in late 2018 in which Dr. Mobin said that the conversations regarding the forging of checks occurred.  Because [plaintiff's] evidence of the forged check conversations is beyond the scope of what [plaintiff] pleaded in its complaint, that evidence is out of bounds for purposes of its opposition to [defendant's] summary judgment motion."[2]

## III.  DISCUSSION

### A.  *Standard of Review*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)"  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)  We generally review a trial court's granting of summary judgment de novo, "considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.  [Citation.]"  (*Ibid.*)

---

[2]     The trial court also noted that plaintiff had reserved a hearing date on a motion for leave to amend its complaint.  But the court denied leave because the request was untimely, stating, "[Plaintiff] offers no explanation for its lengthy delay in seeking leave to amend.  . . .  [T]he Court is exercising its discretion to deny [plaintiff's] request for leave to amend."  Plaintiff does not challenge this ruling on appeal.

On review of a summary judgment ruling, we "(1) 'identif[y] the issues framed by the pleadings,' (2) 'determine[ ] whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor,' and (3) '. . . determine[ ] whether the opposition demonstrates the existence of a triable, material factual issue.'" *(Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252–1253.) In doing so, we strictly construe the moving party's evidence and "liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

Because "[t]he pleadings frame the issues on a motion for summary" judgment, "a party cannot successfully resist such a motion based on allegations that are not contained in the complaint. [Citations.]" (*Heritage Marketing & Ins. Services, Inc. v. Chrustawka* (2008) 160 Cal.App.4th 754, 764; see also *Roth v. Rhodes* (1994) 25 Cal.App.4th 530, 541 [court cannot consider an unpleaded issue in ruling on a motion for summary judgment].) In addition, the papers filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings. (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342.)

B.    *Analysis*

    1.    Dr. Mobin's Deposition Testimony

        Plaintiff contends that Dr. Mobin's deposition testimony describing his telephone conversation with defendant in late 2018 was sufficient, on its own, to constitute a prima facie showing of defamation, that is, defendant's false assertion to Dr. Mobin that one of plaintiff's partners "forged [defendant's] name on checks . . . ."[3]  Based on that evidence, plaintiff concludes that "the only matter in dispute about the [d]efamation is where and when it occurred.  That discrepancy is not enough to justify granting a [s]ummary [j]udgment."

        Plaintiff's reliance on Dr. Mobin's deposition is misplaced.  Because the alleged defamation shown by Dr. Mobin's testimony was based on statements made after the filing of the complaint, it raised a matter outside the specific claims framed by the operative pleading, each of which was based on the alleged 2017 lunch meeting in Newport Beach.  Defendant therefore had no duty to negate that evidence.  (See *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250 [the moving party "had the burden on summary judgment of negating only those "'theories of liability *as alleged in the complaint*'" and [was] not obliged to """refute liability on some theoretical possibility not included in the pleadings,'"'" simply because such a claim was

---

[3]    Defendant contends that plaintiff forfeited these and other arguments by failing to support them with adequate citations to the record.  For purposes of our analysis, we will assume that the record citations provided by plaintiff in its opening brief are adequate.

raised in plaintiff's declaration in opposition . . ."].)  The trial court therefore did not err when it disregarded the statements in Dr. Mobin's deposition in ruling on the motion.

    2.    <u>Valero Declaration</u>

Plaintiff next argues that the trial court should have admitted and considered Valero's declaration testimony that he learned about a 2017 lunch meeting at which defendant told Dr. Mobin that plaintiff did not pay its bills.  According to plaintiff, the "only dispute in [Dr. Mobin's] declaration attached to [d]efendant's [s]ummary [j]udgment motion seems to be that the defamation by [defendant] was by telephone, not in person. [Plaintiff] contends that this discrepancy does not justify the granting of a summary judgment motion."

The trial court, however, did not refuse to consider Valero's statement about an in-person meeting because it conflicted with Dr. Mobin's testimony that the allegedly defamatory statement was made during a telephone call.  The court instead excluded the testimony based on defendant's lack of personal knowledge and hearsay objections.

We generally review evidentiary rulings in the context of a summary judgment motion for abuse of discretion.  (*Duarte v. Pacific Specialty Ins. Co.* (2017) 13 Cal.App.5th 45, 52; but see *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 [declining to decide governing standard for review of evidentiary objections in summary judgment proceedings].)  Even under a de novo standard of review, we find no error in the trial court's ruling.

Evidence Code section 702, subdivision (a) provides that "the testimony of a witness concerning a particular matter is

15

inadmissible unless he has personal knowledge of the matter." Further, Evidence Code section 1200 renders hearsay evidence inadmissible absent an exception. Here, the trial court excluded Valero's statement in paragraph 6 of his declaration because Valero claimed only that he "learned" about defendant's 2017 lunch meeting statement to Dr. Mobin, without also confirming that he was present during the meeting between defendant and Dr. Mobin and actually heard the statement as it was made. That statement failed to establish the requisite personal knowledge for the matter asserted and demonstrated that any knowledge Valero had concerning the statement was based on hearsay.[4]

### 3.  Supplemental Interrogatory Responses

Defendant's final contention is that the trial court erred by refusing to consider its supplemental discovery responses in ruling on the motion. According to plaintiff, those "responses set[ ] forth the 2017 meeting and refer to the January 8, 2019 deposition of Dr. Mobin, wherein Dr. Mobin stated that [defendant] alleged [plaintiff] had forged checks. . . . Both facts are sufficient to deny [defendant's s]ummary [j]udgment [m]otion."

---

[4]     Plaintiff also contends that the trial court erred when it granted summary judgment on his slander per se claim, arguing that "the communications by [defendant] to Dr. Mobin fall under [subdivision 3] of Civil Code 46," that is, they tended "directly to injure him in respect to his office, profession, trade or business." His contention, however, is based on the same arguments asserted in support of his defamation claim which we have already rejected.

16

Plaintiff's contention is without merit.  A "party may not use its own interrogatory responses in its own favor" at trial or any other hearing.  (*Bayramoglu v. Nationstar Mortgage LLC* (2020) 51 Cal.App.5th 726, 740; *Great American Ins. Cos. v. Gordon Trucking, Inc.* (2008) 165 Cal.App.4th 445, 449–450; see also Code Civ. Proc., § 2030.410.)  Plaintiff therefore has failed to demonstrate that the trial court erred by refusing to consider the supplemental responses.

## IV.   DISPOSITION

The judgment is affirmed.  Defendant is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM (D.), J.


We concur:


HOFFSTADT, P. J.


BAKER, J.

18