Filed 7/1/20

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SUKRU BAYRAMOGLU et al., | C084299 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201400166510CUORGDS) |
| v. | |
| NATIONSTAR MORTGAGE LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Raymond M. Cadei, Judge.  Reversed in part and affirmed in part.

Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Plaintiffs and Appellants.

Severson & Werson, Jan T. Chilton, and Elizabeth Holt Andrews for Defendant and Respondent.

Plaintiffs Sukru and Gulay Bayramoglu, like many others, sought to modify their home loan in the midst of the 2008 financial crisis.  They eventually succeeded in doing so in late 2011, obtaining at that time a lower interest rate and a lower monthly payment

1

from their loan servicer, Nationstar Mortgage LLC (Nationstar). But, in their view, all was not well with the loan modification. According to plaintiffs, Nationstar, among other things, unlawfully inserted an inflated loan balance, rather than their actual loan balance, in the loan modification agreement. And for that and other reasons, plaintiffs filed suit against Nationstar.

The trial court, however, rejected plaintiffs' claims following Nationstar's motion for summary judgment. According to the court, because plaintiffs had served "factually devoid" responses to Nationstar's discovery, these responses tended to show that plaintiffs did not possess and could not reasonably obtain needed evidence to support most of their claims. And because, the court further found, plaintiffs never presented evidence to overcome this finding, it granted Nationstar's motion.

On appeal, plaintiffs contend the trial court wrongly found their discovery responses were factually devoid and, even if they were factually devoid, the court nonetheless should have found triable issues of fact precluded summary judgment. We agree with the first part of their argument. The court found plaintiffs' interrogatory responses were factually devoid because plaintiffs, rather than directly state responsive facts, told Nationstar that the answers to its interrogatories could be found in certain identified documents. But although these responses may have been improper and warranted a motion to compel further responses, they were not the equivalent of factually devoid discovery responses. We thus reverse the trial court's decision to the extent it was grounded on that reasoning.

BACKGROUND

I

*Factual Background*

Plaintiffs own a home in Sacramento. In 2005, they refinanced their property and obtained a $293,000 loan from LoanCity. Under the terms of the loan, plaintiffs would

2

pay interest of 5.625 percent on the borrowed amount and monthly payments of about $1,875.

Plaintiffs afterward made the required payments under the loan for several years without, it appears, any incident. But starting in early 2009, after Gulay Bayramoglu received a significant pay cut, plaintiffs struggled to make these payments.

To address the issue, plaintiffs asked for a loan modification from CitiMortgage, Inc. (CitiMortgage), which was then servicing their loan. CitiMortgage, in response, offered a temporary loan modification and a potential permanent modification. According to the trial payment plan CitiMortgage provided, plaintiffs could make a reduced monthly payment of $1,402.42 for three months and, if certain conditions were met, CitiMortgage would later provide plaintiffs with a permanent loan modification agreement.

Plaintiffs agreed to the trial payment plan and made the three payments of $1,402.42. But CitiMortgage never provided plaintiffs with a permanent loan modification agreement allowing plaintiffs to pay this reduced amount going forward. Plaintiffs nonetheless continued paying $1,402.42 after the three-month trial period ended. CitiMortgage accepted several months of these payments, but, starting in July of 2010, it rejected further payments in this reduced amount and informed plaintiffs that they did not qualify for a permanent loan modification. Several months later, CitiMortgage commenced foreclosure proceedings based on plaintiffs' failure to pay all amounts due under the loan.

Attempting to stop the foreclosure proceedings, plaintiffs filed a Chapter 13 bankruptcy petition on November 18, 2010. The case was dismissed in July of 2011 but plaintiffs immediately filed another Chapter 13 bankruptcy petition.

Shortly after plaintiffs filed their second bankruptcy petition, Nationstar, which was now the servicer on plaintiffs' loan, offered a new temporary loan modification and a potential permanent modification. Under the offered temporary payment plan, plaintiffs

3

would make three monthly payments of $1,276.26 and, if certain conditions were met, Nationstar would then provide plaintiffs with a permanent loan modification agreement. Plaintiffs agreed to Nationstar's terms and made the three required payments.

At the end of the temporary payment plan, Nationstar sent plaintiffs a permanent loan modification agreement that included a reduced interest rate and a reduced monthly payment that would start at $1,277.57 and increase over time. It also included a new principal loan balance of $304,086.93. Plaintiffs signed the agreement (the "2011 Agreement") on October 13, 2011. Although they believed the new principal balance stated in the agreement was higher than their actual loan balance, they opted to agree to the new terms anyway. According to both Sukru and Gulay Bayramoglu: "My attorney told me that he was going to sue [CitiMortgage] and [Nationstar] and so it didn't matter if I signed the Agreement even though I didn't agree with the amounts owed. At that time, I was desperate to bring my monthly payments down and I trusted in my attorney's advice that we could dispute the amounts."

II

*Procedural Background*

In July of 2014, plaintiffs sued Nationstar, CitiMortgage, and the Federal National Mortgage Association (more commonly known as Fannie Mae). A year later, after they received their bankruptcy discharge, plaintiffs filed their third amended complaint against the three defendants, alleging, among other things, that Nationstar unlawfully inserted an inflated loan balance, rather than plaintiffs' actual loan balance, in the 2011 Agreement.

Nationstar afterward moved for summary judgment or, in the alternative, summary adjudication of plaintiffs' third amended complaint. The trial court granted Nationstar's motion in part, finding summary adjudication appropriate for several of plaintiffs' claims. But it denied Nationstar's request for summary judgment. The court's decision left plaintiffs with four causes of action left standing—namely, their causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing,

4

violation of California's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), and intentional and negligent misrepresentation.

Two months after the court denied its first motion for summary judgment, Nationstar filed another summary judgment motion or, in the alternative, summary adjudication aimed at plaintiffs' recently filed fourth amended complaint, which added a negligence cause of action. Nationstar acknowledged that courts typically do not entertain successive motions for summary judgment, but it asserted that consideration of its second motion was appropriate in light of plaintiffs' recent discovery responses.

The trial court agreed. According to the court, plaintiffs' recent responses to Nationstar's special interrogatories tended to show that plaintiffs did not possess and could not reasonably obtain needed evidence to support their causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of California's Unfair Competition Law. Nationstar's special interrogatories requested "all facts supporting" these causes of action and plaintiffs, in response, said the responsive facts could be found in several documents that plaintiffs identified. In the court's view, however, because plaintiffs' responses only listed documents without stating facts, these responses were "factually devoid" and thus shifted the burden of production onto plaintiffs to show why summary judgment should not be granted. And because, the court further found, plaintiffs never presented evidence to overcome this finding, it found summary adjudication of these three claims appropriate.

The court also found summary adjudication appropriate for plaintiffs' two other causes of action. It found summary adjudication appropriate for plaintiffs' intentional and negligent misrepresentation claim because their form interrogatory responses showed an element of that claim was missing—namely, plaintiffs did not suffer damages as a result of any misrepresentation. And, for a variety of reasons unrelated to plaintiffs' discovery responses, the court also found summary adjudication appropriate for

5

plaintiffs' negligence claim.  The court thus granted Nationstar's motion for summary judgment and later entered judgment in Nationstar's favor.[1]

Plaintiffs timely appealed.

DISCUSSION

I

*The Trial Court's Finding That Plaintiffs' Discovery Responses*

*Were Factually Devoid*

We consider first plaintiffs' contention that the trial court wrongly found Nationstar met its initial burden on summary judgment based on plaintiffs' "factually devoid" discovery responses.  This argument is relevant to three of plaintiffs' causes of action—namely, their causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of California's Unfair Competition Law.

Before addressing the claim, we start with some general principles governing motions for summary judgment.  A trial court may grant a motion for summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  (Code Civ. Proc., § 437c, subd. (c).)[2]  To meet its burden on summary judgment, a moving defendant must show either that one or more elements of the plaintiff's causes of action fail or that there is a complete defense to the plaintiff's case.  (§ 437c, subd. (p)(2).)  If the defendant meets this initial burden, the burden then shifts to the plaintiff to show that a triable issue of one or more material facts exists.  (*Ibid.*)

---

[1]     Shortly before the court issued its judgment, plaintiffs settled with CitiMortgage and Fannie Mae and dismissed both from the case.

[2]     Undesignated statutory references are to the Code of Civil Procedure.

6

All parties agree with those general principles. But according to plaintiffs, the trial court was too quick to find Nationstar met its initial burden based on plaintiffs' special interrogatory responses. We agree.

The relevant special interrogatories here, again, asked plaintiffs to state "all facts supporting" their causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of California's Unfair Competition Law. And in response to each, plaintiffs attempted to rely on section 2030.230, which provides: "If the answer to an interrogatory would necessitate the preparation or the making of a compilation, abstract, audit, or summary of or from the documents of the party to whom the interrogatory is directed, and if the burden or expense of preparing or making it would be substantially the same for the party propounding the interrogatory as for the responding party, it is a sufficient answer to that interrogatory to refer to this section and to specify the writings from which the answer may be derived or ascertained."

Plaintiffs, believing they were abiding with this statute, began each of their responses by stating: "Pursuant to Cal. Code of Civ. Proc. Section 2030.230, Plaintiffs respond as follows: A compilation, abstract, audit or summary of the responding party's records is necessary in order to fully and completely answer this interrogatory. No such compilation, abstract, audit or summary presently exists, and the burden or expense of preparing it would be substantially the same for the interrogating party as for the responding party." Plaintiffs then, in each of their responses, told Nationstar that the answer to the interrogatory could be found in certain documents they identified, including, for example, a report from plaintiffs' expert that purported to summarize Nationstar's conduct and explain how it "accord[ed] with standard industry practices."[3]

---

[3] Plaintiffs' expert described the documents she reviewed, the relevant facts derived from those documents, and the violations revealed from those facts. In her view, Nationstar, among other things, "improperly held multiple payments" plaintiffs had made

7

The trial court, however, found these responses inadequate. Because it believed "[plaintiffs] certainly should be able to state the facts upon which these claims are based," it declined to consider the various documents plaintiffs had cited and found their responses "factually devoid" as a result. And because it deemed their responses factually devoid, it found Nationstar met its initial burden on summary judgment by showing plaintiffs did not possess and could not reasonably obtain needed evidence to support their claims. (See *Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 587-588 [a defendant may meet its initial burden on summary judgment by showing, "through factually devoid discovery responses[,] that the plaintiff does not possess and cannot reasonably obtain needed evidence"].)

We find the court erred in doing so. Even assuming plaintiffs wrongly relied on section 2030.230, their mistaken reliance on that statute did not, in itself, show they lacked the facts necessary to support their claim. A plaintiff's "factually devoid" discovery responses may be used to shift the burden of production onto the plaintiff when the "logical inference" is that the plaintiff possesses no facts to support his or her claims. (See *Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 892 (*Gaggero*).) But we cannot infer an absence of facts merely because plaintiffs, relying on section 2030.230, told Nationstar that it could find the necessary facts in certain specified documents. And that is true, we find, even if plaintiffs' reliance on section 2030.230 was misplaced. A simple example emphasizes the point. Suppose a defendant asked for all facts showing a plaintiff owned a house. And suppose, in response, the plaintiff cited to section 2030.230

"in an unapplied funds suspense account contrary to Fannie Mae Guidelines," "improperly delayed final review of [plaintiffs'] application for a [loan] modification . . . contrary to Fannie Mae . . . Guidelines," "attempted to collect payment of unpaid late fees that were required to have been waived in connection with the 2011 [loan] modification offered to [plaintiffs] in violation of the mortgage documents and Fannie Mae Mortgage Servicing Guidelines," and wrongly "reversed the application of" four payments plaintiffs had made "prior to calculating the new unpaid principal balance," which "resulted in a higher than necessary new unpaid principal balance."

8

and then told the defendant to see the attached grant deed and title history. The defendant might find the style of the plaintiff's response improper and a misapplication of section 2030.230, but could not, without first considering the referenced documents, say the "logical inference" is that the plaintiff possesses no facts to support his or her claim to the house. (See *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 83 [courts should not find a party's responses factually devoid "without stringent review of the direct, circumstantial and inferential evidence"].) So too here.

The court's decision in *Gaggero* demonstrates the point in a similar context. The plaintiff there had asserted an improper privacy objection during a deposition and, because the plaintiff left the defendant with no facts as a result, the defendant afterward contended the plaintiff's "factually devoid" deposition testimony showed his claims lacked factual support. (*Gaggero*, *supra*, 108 Cal.App.4th at p. 892.) The court, however, rejected the claim. "All we may deduce," the court concluded, "is that plaintiff erroneously believed that the information sought was protected by his right to privacy— not that he either possessed or did not possess such information." (*Id.* at pp. 892-893.) We find a similar conclusion appropriate here too. All we may deduce, to use the *Gaggero* court's reasoning, is that plaintiffs wrongly believed they could provide the information sought through the procedures described in section 2030.230—not that they altogether lacked the facts to support their claims. (Cf. *Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 334 ["The simple failure to answer, or the giving of an evasive answer, requires the propounding party to pursue an order compelling an answer or further answer—otherwise the right to an answer or further answer is waived and an evidence sanction is not available"].)

That said, we appreciate that Nationstar might have believed that plaintiffs improperly invoked section 2030.230 in their responses. But to the extent plaintiffs' "exercise of the option to produce documents under Section 2030.230 [wa]s unwarranted," section 2030.300 describes what Nationstar could have done: move for an

9

order compelling further responses. (§ 2030.300, subd. (a)(2) ["the propounding party may move for an order compelling a further response if the propounding party deems . . . [a]n exercise of the option to produce documents under Section 2030.230 is unwarranted"].) Having declined to pursue that remedy, however, Nationstar could not use plaintiffs' misplaced reliance on section 2030.230 to satisfy its own burden of production on its motion for summary judgment.

Nationstar cites *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96 (*Andrews*) to support a different conclusion, but we find that case to be inapposite. The plaintiffs there, a husband and a wife, sued the defendant for allegedly causing an asbestos-related disease to the husband. (*Id.* at p. 99.) But in response to interrogatories requesting " 'each fact' " supporting their claims, they offered answers that "contain[ed] little more than general allegations against [the defendant] and d[id] not state specific facts showing that [the husband] was actually exposed to asbestos-containing material from [the defendant's] products." (*Id.* at pp. 104-106.) As a result, the court found the "discovery responses were devoid of material facts showing that [the husband] had been exposed to a [defendant] product." (*Id.* at p. 106.) And the court found that true even though the plaintiffs' response to a different interrogatory included a list of witnesses and their response to another interrogatory, "which called for all documents relating to alleged asbestos exposures," included a list of documents. (*Ibid.*) According to the court, having effectively conceded they had no facts showing the defendant harmed the husband in their responses to interrogatories requesting " 'each fact' " supporting their claims, the plaintiffs could not overcome that concession merely by pointing to lists of documents, witnesses, and depositions. (*Ibid.*)

Our facts, however, are quite different from those in *Andrews*. Plaintiffs' responses to the interrogatories requesting "all facts" supporting their claims did not, like the responses in *Andrews*, effectively concede the absence of supportive facts. Plaintiffs, in their responses, perhaps improperly exercised the option to produce documents under

10

section 2030.230 rather than state the requested facts. But no one contends the referenced documents were devoid of facts to support plaintiffs' claims. And again, we cannot infer an absence of facts merely because plaintiffs directed Nationstar to find the responsive facts in certain documents. As *Andrews* itself suggested, the burden of production is not so easily shifted onto the plaintiff; " 'the burden should not shift without *stringent* review of the direct, circumstantial and inferential evidence.' [Citation.]" (*Andrews*, *supra*, 138 Cal.App.4th at p. 103, italics added.) And that "stringent review of the direct, circumstantial and inferential evidence" in this case should have included some consideration of plaintiffs' cited documents.

Before moving beyond *Andrews*, we acknowledge it included some language that is unhelpful to plaintiffs. Most notably, the court at one point said: "If plaintiffs respond to comprehensive interrogatories seeking all known facts with boilerplate answers that restate their allegations, or simply provide laundry lists of people and/or documents, the burden of production will almost certainly be shifted to them once defendants move for summary judgment and properly present plaintiffs' factually devoid discovery responses." (*Andrews*, *supra*, 138 Cal.App.4th at p. 107.) But we do not read that comment to mean that, every time a plaintiff mistakenly relies on section 2030.230 in response to a defendant's interrogatories, courts should find the response factually devoid for purposes of summary judgment. To start, *Andrews* never even considered that statute, and so we hesitate to find the case supports that broad proposition. (See *Roberts v. City of Palmdale* (1993) 5 Cal.4th 363, 372 ["cases are not authority for propositions not considered therein"].) But more importantly, by its own terms, *Andrews*'s general rule for shifting the burden of proof is triggered only if "plaintiffs respond to comprehensive interrogatories seeking all known facts with" either "boilerplate answers that restate their allegations" or "laundry lists of people and/or documents." (*Andrews*, at p. 107.) And we question whether all plaintiffs' responses here—most of which were distinct from one

11

another and referred to different sets of documents—can be characterized as being "boilerplate" or including "laundry lists."

In the end, we find *Gaggero*, not *Andrews*, most helpful in our review of plaintiffs' discovery responses. Again, as *Gaggero* demonstrates in a context similar to our own, a defendant cannot contend a plaintiff's discovery responses are factually devoid for purposes of summary judgment merely because they include only improper objections. (*Gaggero*, *supra*, 108 Cal.App.4th at pp. 892-893.) And if a plaintiff's responses should not be deemed factually devoid merely because they rely on improper objections, we find a plaintiff's responses similarly should not be deemed factually devoid merely because they improperly rely on section 2030.230. Both types of responses reflect a misapplication of civil discovery rules, but neither type of response, in itself, shows the plaintiff lacks the facts to support his or her claims—and so neither, in itself, warrants shifting the burden of production onto the plaintiff.

Moving beyond *Andrews*, Nationstar contends it already successfully moved to compel plaintiffs to produce further discovery responses and thus it had no need to do so again here. But Nationstar's prior motion to compel concerned only plaintiffs' objection that several special interrogatories were ambiguous. It had nothing to do with plaintiffs' relying on section 2030.230 in their responses to certain interrogatories. We thus find Nationstar's prior motion to compel of limited relevance to our review here.

In short, we find the trial court improperly shifted the burden of production onto plaintiffs to support their causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of California's Unfair Competition Law. And because we find that reason enough to warrant reversal on those causes of action, we need not consider plaintiffs' remaining arguments concerning these claims. (See *Scheiding v. Dinwiddie Construction Co.*, *supra*, 69 Cal.App.4th at pp. 83-84 [trial court decision that wrongly shifted the burden of production onto the plaintiffs warranted reversal].)

12

## II

### *The Trial Court's Limiting Plaintiffs' Claims to Acts That Occurred After October 13, 2011*

We consider next plaintiffs' contention that the trial court wrongly limited their claims to acts that occurred after October 13, 2011—which, for our purposes, is relevant to plaintiffs' two remaining causes of action, negligence and intentional and negligent misrepresentation.

October 13, 2011, again, is the date plaintiffs signed the 2011 Agreement. Because, the trial court found, plaintiffs knowingly accepted the terms of the 2011 Agreement on that date, it held they could not object to any misrepresentation that Nationstar may have made about the loan modification process before that date. The court thus limited plaintiffs' claims against Nationstar to post-agreement conduct—that is, to acts that occurred after October 13, 2011.

Plaintiffs, opposing that conclusion, assert that whether they knowingly accepted the terms of the 2011 Agreement is a triable issue of fact. Per the agreement, as plaintiffs explain, their new principal balance was $304,086.93 and this balance was supposed to be calculated, in part, by "excluding unpaid late charges" and subtracting "amounts paid to [Nationstar] but not previously credited to [the] Loan." But according to plaintiffs, the new balance of $304,086.93 nonetheless included the unpaid late charges that should have been excluded and failed to "properly credit[] the payments [plaintiffs] had made." And, plaintiffs maintain, they only learned of these details after they signed the agreement. So, they reason, the court wrongly found they knowingly accepted the terms of the 2011 Agreement and thus wrongly limited their claims to acts that occurred after October 13, 2011.

But even assuming that is true, plaintiffs fail to show how that error is relevant to their causes of action for negligence and intentional and negligent misrepresentation. Plaintiffs never even describe the substance of their negligence claim in their appellate

13

briefing, noting only that they added this claim in their fourth amended complaint. And so, even assuming the court should have considered conduct before October 13, 2011, we have no reason to find that error is relevant or prejudicial to their negligence claim. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 455 [before an error may warrant reversal, "appellant has the burden of affirmatively demonstrating prejudice"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*) ["When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)[4]

We find similarly for plaintiffs' cause of action for intentional and negligent misrepresentation. Plaintiffs offer one reason why Nationstar's conduct on or before October 13, 2011, is relevant to this cause of action, but it is not a persuasive one. They contend "the court erred in disregarding Nationstar's pre-October 13, 2011 actions," and then, quoting some unidentified source, say they " 'lost income because their home loan payment includes approximately $30,000 for arrearages and other fees and charges that never should have been included had defendants modified their loan in November of 2009.' " But plaintiffs neither describe any misrepresentation that Nationstar made that caused this harm, nor offer any record citation to support their quote. And so, for this cause of action too, we fail to see how the trial court's decision to limit plaintiffs' claims to acts that occurred after October 13, 2011, was prejudicial. (*Christ v. Schwartz*, *supra*, 2 Cal.App.5th at p. 455; *Badie*, *supra*, 67 Cal.App.4th at pp. 784-785; see also Cal. Rules of Court, rule 8.204(a)(1)(C) [each brief must "[s]upport any reference to a matter in the

---

**4**     Plaintiffs only discussed their negligence claim, and briefly at that, at oral argument, explaining then that their claim is based in part on Nationstar's improper calculation of plaintiffs' loan balance. But, as Nationstar suggested in response, that was too little too late. Plaintiffs needed to explain their argument in their briefing, not simply at oral argument. (*Kinney v. Vaccari* (1980) 27 Cal.3d 348, 356, fn. 6 ["An appellate court is not required to consider any point made for the first time at oral argument, and it will be deemed waived"].)

14

record by a citation to the volume and page number of the record where the matter appears"].)

III

*The Trial Court's Summary Adjudication of Plaintiffs' Cause of Action for Intentional and Negligent Misrepresentation*

Finally, we consider plaintiffs' remaining contentions concerning the trial court's summary adjudication of their cause of action for intentional and negligent misrepresentation.

Similar to their argument discussed in part I, plaintiffs first contend the trial court wrongly found Nationstar met its initial burden to show this cause of action lacked factual support based on plaintiffs' "factually devoid" special interrogatory responses. But the court never found plaintiffs' responses to Nationstar's special interrogatories were relevant to this cause of action. It instead found summary adjudication of this claim appropriate based on plaintiffs' responses to Nationstar's *form* interrogatories. And the court found as much not because these responses were "factually devoid," but because the substance of these responses showed an element of plaintiffs' claim was missing— namely, they showed plaintiffs could not "establish damages resulting from an intentional or negligent misrepresentation made by Nationstar." (See *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239, fn. 4 [causes of action for fraud and negligent misrepresentation require, among other things, actual damages].)

Next, for largely identical reasons, plaintiffs contend the trial court wrongly allowed Nationstar to file a second motion for summary judgment on this cause of action. Under section 437c, subdivision (f)(2), a "party shall not move for summary judgment based on issues asserted in a prior motion for summary adjudication and denied by the court unless that party establishes, to the satisfaction of the court, newly discovered facts or circumstances or a change of law supporting the issues reasserted in the summary judgment motion." Attempting to make that showing below, Nationstar asserted that

15

plaintiffs' discovery responses since its first motion were "newly discovered facts" that supported its second motion. And, as to this cause of action, the trial court agreed based on plaintiffs' "newly" served *form* interrogatory responses. But plaintiffs, misunderstanding the court's reasoning, contend the court was wrong to find a second motion was warranted based on plaintiffs' "factually devoid" *special* interrogatories responses. We reject this misguided argument.

Lastly, for a variety of reasons, plaintiffs contend the trial court wrongly found they could not show damages. But we find none of their arguments persuasive.

Attempting to show they suffered damages that "were both recoverable and caused by Nationstar's misrepresentations," plaintiffs first assert they suffered damages in incurring attorney fees in the bankruptcy proceedings "as a result of . . . Nationstar's[] negligent and/or intentional misrepresentations." But they never cite any evidence or provide any explanation to support this claim. As a result, it is not at all clear that plaintiffs incurred any fees in the bankruptcy proceedings due to Nationstar's conduct.

Plaintiffs further contend they suffered damages in needing to pay "increased interest due to Nationstar's misapplication of payments." According to plaintiffs, shortly after the parties entered into the 2011 Agreement, "Nationstar applied a portion of [plaintiffs' loan payments] to late charges," afterward "reversed the application of these payments to [plaintiffs'] account and immediately credited [plaintiffs'] account with a principal payment," and, through "both of these acts," wrongly caused plaintiffs' principal balance to be higher than necessary. But even assuming all that is true, we fail to see how this concerns any misrepresentation. Indeed, per plaintiffs' own characterization, they paid "increased interest due to Nationstar's misapplication of payments," not due to any apparent misrepresentation. So even supposing their alleged facts are true, they still do not support a claim for fraud or negligent misrepresentation.

Plaintiffs next, as mentioned before, assert that "the court erred in disregarding Nationstar's pre-October 13, 2011 actions," and then, quoting an unidentified source, say

16

they " 'lost income because their home loan payment includes approximately $30,000 for arrearages and other fees and charges that never should have been included had defendants modified their loan in November of 2009.' " But, again, plaintiffs neither describe any misrepresentation that Nationstar made that caused this harm, nor offer any record citation to support their assertion. We reject their argument as a result. (Cal. Rules of Court, rule 8.204(a)(1)(C) [each brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"]; *Badie*, *supra*, 67 Cal.App.4th at pp. 784-785.)

Finally, plaintiffs contend they suffered emotional distress damages that support their cause of action for fraud and negligent misrepresentation. Quoting *Chatton v. National Union Fire Ins. Co.* (1992) 10 Cal.App.4th 846, they note that "under general principles, emotional distress damages resulting from financial losses are recoverable if caused by willful deceit, i.e., intentional fraud." (*Id.* at p. 860, fn. 2.) But plaintiffs never show how that principle helps them. To start, they offer no competent evidence to support their claim for emotional distress damages. They cite only the separate statement, which is not evidence, and their own form interrogatory responses, which cannot itself serve as competent evidence to create a genuine issue of material fact. (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 178, fn. 4 ["a separate statement is not evidence"]; *Great American Ins. Cos. v. Gordon Trucking, Inc.* (2008) 165 Cal.App.4th 445, 450 [a "party may not use its own interrogatory responses in its own favor" at trial or any other hearing]; see also § 2030.410.) That is reason enough to reject their claim.

But even if we were to consider plaintiffs' own form interrogatory responses to be competent evidence, that still would not help them. Plaintiffs noted there only that Gulay Bayramoglu suffered "migraines attributable to the INCIDENT," but it is not at all clear what the "INCIDENT" even means. The term "INCIDENT" is one of the defined terms in California's standard form interrogatories, but is not subject to a single definition. The

17

party propounding the interrogatories may select a default definition of "INCIDENT" or offer its own definition of the term. (Judicial Council Forms, form DISC-001.) What Nationstar chose to do here, however, we cannot say, as Nationstar's propounded form interrogatories do not appear to be part of the record. We are left, as a result, only with plaintiffs' vague claim that Gulay Bayramoglu suffered "migraines attributable to the INCIDENT"—a claim that neither ties Nationstar's alleged conduct to any emotional distress damages nor shows that Nationstar's alleged misrepresentations, whatever they may be, were willful. We thus reject this argument too.

## DISPOSITION

The judgment is reversed as to plaintiffs' causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of California's Unfair Competition Law. It is affirmed as to plaintiffs' causes of action for negligence and intentional and negligent misrepresentation. Plaintiffs shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)


        /s/
        BLEASE, J.


We concur:


    /s/
RAYE, P. J.


    /s/
HULL, J.


18